GIMBEL BROTHERS, INC., Plaintiff, *v.* WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Defendant.

Third Department, March 8, 1939.

Chadbourne, Wallace, Parke & Whiteside [*Alexander B. Royce, Charles Pickett* and *James K. Crimmins* of counsel], for the plaintiff.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General,* and *John C. Crary, Assistant Attorney-General,* of counsel], for the defendant.

BLISS, J. Plaintiff is a domestic business corporation which conducts a general department store business in the city of New York. Since November, 1936, it has been using in this store a credit coupon system which defendant claims is a form of banking and he says that the plaintiff cannot legally engage therein. He argues that it constitutes the receipt of deposits and is, therefore, a form of banking prohibited to plaintiff by section 18 of the General Corporation Law and section 131 of the Banking Law. Plaintiff's credit coupon system was installed to promote sales and operates generally as follows: A customer purchases of plaintiff a book of credit coupons redeemable in merchandise only. These credit coupons come in twenty-five-cent, fifty-cent and one-dollar denominations which are bound in books of three different values, namely, fifteen dollars, twenty-five dollars and fifty dollars. At the time of purchase the customer pays down a portion of the purchase price for an entire book and pays the balance over a period of from two to four months. Included in the purchase price is a small carrying charge. The customer may use the full amount of coupons at any time after their issuance and within ninety days for the purchase of merchandise at the plaintiff's store. Any small difference between the face value of the credit coupons and the amount of the customer's purchase must be paid by the customer in cash. Under no circumstances can any coupons or any portion thereof be redeemed for cash. The plaintiff's experience has shown that a very large percentage of the coupons are used by the purchaser shortly after their issuance and long before. the book is paid for. The entire plan is one for sales promotion and an application of installment selling to general merchandise instead of to·

particular and large items of merchandise only. A bank is authorized to receive deposits of money. (Banking Law, § 96.) Section 18 of the General Corporation Law provides that no corporation other than a bank shall be deemed to possess the power of receiving deposits or of engaging in any other form of banking and section 131 of the Banking Law forbids any corporation other than a National or Federal Reserve bank, unless expressly authorized by the laws of this State, to employ any part of its property or be in any way interested in any fund which shall be employed for the purpose of receiving deposits.

A deposit in the banking sense has been many times defined. It is the placing of money with the bank to be withdrawn upon the depositor's demand or under rules and regulations agreed upon. (Black's Law Dict.) " The deposit of money by a customer with his banker is one of loan, with a superadded obligation that the money is to be paid when demanded by a check." (*Davis* v. *Elmira Savings Bank,* 161 U. S. 275.) An ordinary bank deposit is made for the benefit of the depositor who loans his money to the banker " and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand." (*Marine Bank* v. *Fulton Bank,* 2 Wall. 252.) Money deposited becomes a part of the bank's general funds and it contracts to pay its depositor's checks. (*Baldwin's Bank* v. *Smith,* 215 N. Y. 76.) Money is deposited. Money is to be returned. (*Peoples Bank* v. *Legrand,* 103 Penn. St. 309.)

The principal feature of a general bank deposit is that the depositor can demand repayment of the amount deposited at any time. Section 2 of the New York Banking Law defines two kinds of deposits, demand and time. A demand deposit, says this law, means one the payment of which can be legally required within thirty days, while time deposits mean those the payment of which cannot be legally required within thirty days. The important feature of these definitions for our present purpose is that the bank must pay back the deposit in money. The important feature of the credit coupon system of this plaintiff, however, is that the coupons may never be redeemed in cash. Another salient feature of the plan is that the coupons, in the large majority of cases, are used up by the purchase of goods long before the coupons themselves are paid for, and thus there is no possible deposit as to those payments made after the goods have been selected.

It would seem that this issue has been set at rest by a portion of the opinion of Judge LEHMAN of the Court of Appeals in *Meserole Securities Co.* v. *Cosman* (253 N. Y. 130). He there said: " Under section 2 and section 106 of the Banking Law some powers are

conferred upon banks which, in some form, individuals and corporations customarily exercise in operations which clearly are not banking operations. We may cite an extreme example: Banks receive deposits of money payable on demand. That undoubtedly constitutes a form of banking. Dry goods stores at times receive deposits of money, similarly payable on demand. The purpose of the store may be to enable customers to charge purchases against these accounts, yet the operation of receiving moneys on deposit by a dry goods store is so closely analogous to the business of receiving deposits by a bank that it may reasonably be said to constitute a banking operation. On the other hand, some dry goods stores customarily demand and receive deposits of money from customers to be applied on purchases where either delivery or payment is postponed. Sometimes, indeed, merchants customarily receive deposits as evidence of good faith before a contract or sale is made. Certainly in such cases it may hardly be said that even habitual receiving of deposits of money constitutes a form of banking."

Of course the example cited by Judge LEHMAN of the difference between the receipt of deposits by a bank and the receipt of money from customers by stores as evidence of good faith before a contract or sale is made was not the question at issue in the *Meserole* case and was used for the purposes of discussion only. Nevertheless, it clearly states the difference between the banking operation of receiving deposits and the sales promotion scheme underlying the plaintiff's credit coupon plan. Surely we must accord it great weight in reaching our decision.

We know of no banking operation comparable to this credit coupon plan. Here the plaintiff is not holding money which it must repay. It is selling goods. When the book is issued plaintiff has in substance sold an equal amount of goods which are to be paid for on the installment plan and which have not yet been selected. A similar form of transaction is found in the issuance of meal tickets by a restaurant, tokens by a trolley or bus transportation company and Christmas gift certificates by stores. One would not think of calling these transactions engaging in banking or the receipt of deposits in the banking sense.

We find no violation of the statutes as claimed by the defendant and direct judgment for the plaintiff.

HILL, P. J., RHODES, CRAPSER and HEFFERNAN, JJ., concur.

Judgment rendered in favor of the plaintiff, without costs, in accordance with stipulation.