*Decision will be entered under Rule 50.*

ESTATE OF ANNINA FABBRICOTTI FARA FORNI, DECEASED, UNITED STATES TRUST COMPANY OF NEW YORK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106798. Promulgated June 10, 1942.

*Edward S. Bentley, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN: The respondent determined a deficiency of $8,459.70 in the estate tax of the estate of Annina Fabbricotti Fara Forni. The petitioner claims an overpayment of $9,434.71.

The petition raised several issues, all of which have been settled except the question whether or not a fund of $41,020.48, held by the United States Trust Co., constituted "moneys deposited" within the meaning of that phrase as found in section 303 (e) of the Revenue Act of 1926, as amended by section 403 (d) of the Revenue Act of 1934.

The facts were stipulated and as so stipulated we adopt them as our findings of fact. In so far as they are material to the issue they are substantially as follows:

Annina Fabbricotti Fara Forni, the decedent, died on June 29, 1938. On November 22, 1938, the petitioner, United States Trust Co., of New York, hereinafter referred to as the trust company, was duly appointed as executor of the last will and testament of the decedent and duly qualified as such executor. On August 31, 1939, the executor filed with the collector of internal revenue for the second district of New York a Federal estate tax return, wherein the executor elected that the value of the gross estate should be determined as of the date of distribution, May 22, 1939, in accordance with subdivision (j) of section 811 of the Internal Revenue Code.

On the return under schedule C, "Mortgages, Notes and Cash", the executor, among other items, reported the following as part of the decedent's gross estate:

|  | Subsequent valuation date | Value under option | Value at date of death |
| --- | --- | --- | --- |
| Cash in Custodian Account at United States Trust Company of New York_____ | 5/22/39 | $41,020.48 | $41,020.48 |

On or about November 29, 1939, the executor sent to the collector of internal revenue for the second district of New York a letter reading as follows:

NOVEMBER 28, 1939.

COLLECTOR OF INTERNAL REVENUE,
    *Second District of New York,*
        *Custom House, New York, N. Y.*

In re: Annina Fabbricotti Fara Forni Estate

SIR: Referring to the estate tax return on Form 706 filed by this Company as executor of the estate of Annina Fabbricotti Fara Forni, who died June 29, 1938, a resident of Lugano, Switzerland, and an Italian citizen, which return was filed in your office on August 31, 1939, we would say that upon further examination we find that Item 18 in Schedule C reading as follows:

|  | Subsequent Valuation Date | Value under Option | Value at Date of Death |
| --- | --- | --- | --- |
| Cash in Custodian Account at United States Trust Company of New York__ | 5/22/39 | $41,020.48 | $41,020.48 |
| Shou'd read as follows: "Cash on deposit with United States Trust Company of New York in checking account_____ |  | $0.00 | 0.00" |

The decedent was not engaged in business within the United States at the time of her death and was a non-resident, and hence the moneys so deposited are specifically excluded from gross estate under subdivision e of section 303 of the Revenue Act of 1934.

This change will result in reducing Item 1 of Schedule R to $501,470.72 and correspondingly Item 12 to $473,895.99, with a corresponding reducing in tax.

We would also request that the appropriate adjustment in tax be had upon the audit of the return.

Yours very truly,

UNITED STATES TRUST COMPANY OF NEW YORK,

By

*As Executor of the Estate of
Annina Fabbricotti Fara Forni.*

At the time of her death the decedent was a citizen of the Kingdom of Italy and resided at Lugano, Switzerland, and was a non-citizen (*sic*) not a resident of the United States, and was not engaged in business in the United States of America.

The trust company was duly incorporated by the Legislature of the State of New York on April 12, 1853. At all times material hereto, the Banking Law of the State of New York provided that:

Every trust company incorporated by a special law shall possess the powers of trust companies incorporated under this chapter and shall be subject to such provisions of this chapter as are not inconsistent with the special laws relating to such specially chartered company.

During all the years material hereto, the trust company conducted a general banking and trust business in the city of New York. It did not have any savings department or savings accounts. The greater part of the trust company's business consisted of acting as agent, custodian, executor, administrator, guardian, trustee, and committee and in other fiduciary capacities. The draft accounts which it maintained for customers who were not in one way or another related to its business as agent, custodian, executor, etc., above referred to, were few in number, but the balances carried in such accounts were large in amount.

On or about May 15, 1902, the decedent, then known as Annina F. Kingsley, delivered to the trust company certain securities and mortgages owned by her and the sum of $10,000 in cash or check, under an agreement no copy of which can be found at the present time.

Thereupon the trust company opened on its books two accounts in the name of the decedent, one referred to as a "Property Account" and the other bearing no title, but which after November 1924 was termed "Agency Account." These accounts were thereafter continuously maintained by the trust company and were in existence at the time of her death. The latter account will be referred to as "Agency Account."

In the property account in the name of the decedent the trust company included and listed the securities in the possession of the trust company which the decedent from time to time owned, but the property account did not include any cash. The property account referred to above was contained in a ledger known as a "Property

Ledger", which contained accounts for all personal property for which the trust company acted as agent, custodian, executor, administrator, guardian, trustee, or committee, or in other fiduciary capacities, under written instruments or otherwise. No cash was ever entered in the property ledger. Where acting as agent, custodian, or fiduciary, any cash transactions, including receipts and disbursements of either income or corpus, were entered in a separate account for each trust, estate, etc., or person, which included only cash. With respect to decedent and any trust, estate, or property for whom the trust company acted, the company kept no separate account in its banking department as distinguished from the accounts hereinabove described.

The trust company credited to the decedent the sum of $10,000 in the agency account and thereafter credited to the decedent in the agency account all sums of money from time to time received by the trust company from the decedent or for her account, whether by way of principal or income, including, among other things, cash, proceeds of the sale of investments, and other property, interest, dividends, and other sums of money.

During all the years material hereto the trust company collected the income on the securities and investments included in the property account. The percentage commission which the trust company charged for collecting income for the decedent's account was substantially the same as was charged for collecting the income for any other account where the corpus or principal was in an amount substantially similar to the amount of securities held for the decedent or where the amount of income was comparable.

About the year 1924 the trust company became trustee of a trust created under the will of decedent's former husband, H. S. Kingsley, under the terms of which the decedent was entitled to the income for life on certain trust corpus. Accounts for such trust were kept by the trust company and the income from the trust for the benefit of decedent was regularly credited to her agency account.

It was the general practice of the trust company to advise the decedent concerning suitable investments and, upon instructions from her, to make investments. The purchase price of securities was charged to the agency account. There were also charged to that account expenses in connection with the foreclosure of mortgages, income taxes, purchases of foreign exchange, collection commissions, and other items. Collections of income and proceeds of sales of securities were credited to the agency account.

The decedent filed signature cards with the trust company on February 24, 1906, and again on November 30, 1931. It is not known whether the words "Agency Account" written by the trust company

on the signature card of February 24, 1906, were placed thereon before or after the filing thereof with the trust company.

From time to time after the opening of the account the decedent drew drafts or checks upon the trust company to the number of at least 569, which were duly paid by the trust company on presentation and charged against the agency account.

The items credited to the agency account consisted principally of interest, dividends, the sale of stock rights, amounts received from the executors of the H. S. Kingsley estate, amounts deposited, the sale of securities, and other similar entries. The items debited to the account consisted largely of drafts, commissions on income account, purchases of stocks and bonds, income tax payments, amounts cabled abroad, and minor charges relating to real estate.

At all times material to this issue the trust company maintained in its own name an account with the Bank of the Manhattan Co., in which account the trust company deposited all sums of money which it received from all sources, including, among other things, agency accounts, draft accounts, trust accounts, income from loans, investments, and other property owned by the trust company, income from investments and other property held by it as executor, administrator, guardian, trustee, or other fiduciary capacity, income from investments and other property held by the trust company as custodian or agent, proceeds of loans made by the trust company in the regular course of business, proceeds from the sale of investments and other property owned by the trust company, or held by it as executor, administrator, guardian, trustee, or other fiduciary capacity, or held by the trust company as custodian or agent, and commissions for services rendered by the trust company; and from which account the trust company from time to time withdrew and paid all sums of money required in connection with its business, including among other things, salaries of officers and employees, operating expenses, corporation taxes, real estate and other taxes, dividends to stockholders of the trust company, interest, loans made in the regular course of its business, purchase price of investments and other property purchased by the trust company, or acquired by it as executor, administrator, guardian, trustee, or other fiduciary, or held by the trust company as custodian or agent, and moneys remitted to or for the account of customers, beneficiaries, distributees, and others.

The trust company was not a member of the New York Clearing House Association, and all checks or drafts which it received from all sources were cleared by the Bank of the Manhattan Co. through the said account.

All sums of money received by the trust company and credited to the accounts maintained with it, including the decedent's agency account, were deposited by the trust company in the account main-

tained by it in the name of the trust company with the Bank of the Manhattan Co., and all sums of money charged against the accounts maintained with the trust company, including the decedent's agency account, were paid by the trust company's check drawn on its account with the Bank of the Manhattan Co., except items covered by the trust company's debit slips or other office or bookkeeping memoranda. Between May 15, 1902, and June 16, 1933, the trust company credited to the agency account of the decedent interest on daily balances at rates varying from one-fourth percent to 3 percent.

On December 10, 1907, the decedent wrote to the trust company a letter reading as follows:

43 Fifth Avenue.

HENRY E. AHERN, Esq.
    *Secretary*

DEAR SIR: I find my account ending with a balance on November 15th ($7,793.37) seven thousand seven hundred and ninety three dollars and thirty seven cents, quite correct and please accept my thanks. I am once more in this country and shall be at 43 Fifth Ave. for some months. Will you please let me know what interest the U. S. is paying on deposits and how much commissions I am being charged, and oblige

Yours sincerely,

ANNINA F. KINGSLEY

Tuesday, December Tenth/07

and on December 11, 1907, the trust company replied as follows:

December 11th, 1907.

Mrs. ANNINA F. KINGSLEY,
    43 Fifth Avenue, New York.

DEAR MADAM: Replying to your favor of 10th instant, we beg to say that we are paying 2% interest on your deposit with us, and charging 2% commission on the income collected.

Yours very truly,

HENRY E. AHERN
*Secretary.*

In each of the published statements of the trust company from 1902 to June 30, 1938, the item designated as "Deposits" included the balance standing to the credit of the decedent in the agency account in various sums ranging from $2,203.03 to $41,020.48. The item of "Deposits" included the amount of cash shown as a credit balance in all the accounts maintained with the trust company, whether the trust company was acting as a fiduciary or otherwise.

In each of the published statements the item designated as "Interest on Deposits" included accrued interest on all of the accounts on which the trust company was paying interest. In none of the published statements was there included the securities of the decedent held and listed in the property account, nor was there included in the statements any property (other than cash) for which the petitioner was acting as fiduciary or in any other capacity. The cash represented

by the credits or balance in any of the trust company's accounts where the trust company was acting as fiduciary or otherwise was never kept separate from other funds or earmarked in any way.

Since January 1, 1934, all cash accounts maintained with the trust company have been insured by the Federal Deposit Insurance Corporation to the extent provided by statute, and since that date the trust company has paid to the Federal Deposit Insurance Corporation insurance premiums at the rates fixed by statute. In determining the sums of money upon which such insurance premiums were computed and paid to the Federal Deposit Insurance Corporation under the Federal Deposit Insurance Act, there were included the balances to the credit of the decedent in the agency account, and the balances in all cash accounts maintained with the trust company, whether it was acting in a fiduciary capacity or otherwise.

In 1932, 1933, and 1934 the trust company charged certain sums of money representing Federal taxes upon checks or drafts drawn against the accounts on its books, including the account of the decedent, and paid the amount of such taxes to the collector of internal revenue for the second district of New York.

It was further stipulated that the use in the stipulation of the word "agency" or of any name or language as descriptive of petitioner's account or status, whether or not in juxtaposition with different names, language, or description, is not to be taken as any admission on the part of respondent that decedent's account is not a trust account or other fiduciary account or that the trust company was not acting in a fiduciary or trust capacity with respect to the decedent's cash which it held.

The statute [1] specifically excludes from the gross estate of a nonresident, not a citizen of the United States and not engaged in business in the United States at the time of his death, all moneys deposited by him with any person carrying on a banking business. It has been stipulated that at the time of her death decedent was a nonresident, was not a citizen of the United States, and was not engaged in business in the United States. It is also agreed that the trust company conducted both a general banking and a trust business. The sole issue before us, therefore, is whether the fund of $41,020.48, held

---

[1] Sec. 303. [Revenue Act of 1926 as amended.] For the purpose of the tax the value of the net estate shall be determined—

&ast; &ast; &ast; &ast; &ast; &ast;

(b) In the case of a nonresident not a citizen of the United States, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(e) The amount receivable as insurance upon the life of a nonresident not a citizen of the United States, and any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death, shall not, for the purpose of this title, be deemed property within the United States.

by the trust company, represented "moneys deposited" in a banking institution.

In the absence of any specific agreement governing the dealings between the decedent and the trust company at their inception in 1902, we have only the stipulation of facts and the exhibits from which we may discover the real status of the agency account at the date of the decedent's death. If that account reflects "moneys deposited", the balance therein is not taxable.

The agency account, extending from May 21, 1902, to July 1, 1938, is entered on 86 large ledger sheets, each containing approximately 50 credit items and perhaps from 10 to 20 debit items. Balances were usually struck in May and November of each year. In that account the credits consist chiefly of interest, dividends, cash deposits, and distributions from the Kingsley estate. Occasional credit entries represent the sale of investments and infrequent minor receipts. The debits are principally drafts or checks, 569 or more in number, proceeds from sales of securities, commissions, and expenses incidental to specific transactions.

From a careful consideration of the evidence before us, we are of the opinion that the agency account was predominatingly a checking account characterized by the use which patrons of a bank customarily make of such bank accounts. Though there are some facts which tend in the opposite direction, the evidence clearly preponderates to the conclusion stated.

The word "deposit" as found in the statute refers to the generally accepted use of that term in banking parlance.

The term "deposit" has a well accepted meaning in the banking business and has been defined as the act of placing or lodging money in the custody of a bank or banker for safety or convenience to be withdrawn at the will of the depositor or under rules and regulations agreed on. [9 Corpus Juris Secundum, sec. 267, p. 544.]

See Black's Law Dictionary, p. 559.

A general deposit * * * is the payment of money into the bank to be repaid on demand, in whole or in part, as called for in any current money and has been defined as a deposit generally to the credit of a depositor to be drawn upon by him in the usual course of banking business. [9 Corpus Juris Secundum, sec. 273.]

A special deposit is a delivery of property, securities or even money to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor, or one for some specific purpose.

&ast;  *  *  *  *  *  *

A special deposit becomes such by specific directions or agreement or through circumstances sufficient to create a trust. [9 Corpus Juris Secundum, sec. 274.]

See also *Gimbel Brothers., Inc.* v. *White*, 256 App. Div. 439, 441; 10 N. Y. Supp. 2d. 666, and *Marine Bank of Chicago* v. *Fulton County Bank*, 2 Wall. 252, 256.

There is no indication in the record that any deposits or credits were hedged in by any special or limiting restrictions which caused them to be termed "special deposits."

We do not deem it necessary to inquire into the original or immediate source of the credits or into the basis of the debits. The face of the account shows that the amounts noted were received and paid and that the corresponding entries were made in the usual course of business. The balance in the account was constantly maintained subject to the decedent's withdrawal, at her will. If it can be said that the trust company served in a fiduciary capacity with reference to some items, it must also be said that after it had discharged that function it placed the monetary results thereof in the decedent's bank account and made it subject to her demand. It ceased to have fiduciary control over such deposits and, on the contrary, affirmatively transferred the right to and disposition of the deposits to the decedent.

The trust company's treatment of the decedent's agency account, its inclusion of the balances as "deposits" in its reports and statements, and its payment of interest on balances are wholly consistent with this view. Also consistent are its acts in insuring the account and in paying a Federal tax on the checks or drafts which it honored against the account. The facts in the case at bar bring the sum to the decedent's credit on the trust company's books at the date of her death clearly within the definition and concept of the statutory phrase "moneys deposited" and hence the amount in controversy is excluded from the taxable estate under the provisions of section 303 (e), as amended.

The facts in this case make unnecessary a study to determine whether there was legal or legislative justification for respondent's action in interpreting the statute narrowly as appears in G. C. M. 22419, C. B. 1940–2, p. 288. Assuming the correctness of respondent's interpretation, the facts here present entitle petitioner to the exclusion asked.

*Decision will be entered under Rule 50.*