THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
TERRENCE BOURNE, Appellant.

First Department, July 21, 1988

## APPEARANCES OF COUNSEL

*Ralph Fabrizio* of counsel *(Carol Gette* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Andrea Hirsch* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

CARRO, J.

Express waivers, the "intentional relinquishment or abandonment of a known right" *(Johnson v Zerbst,* 304 US 458, 464), are ordinarily given effect if "knowingly and voluntarily made" *(Barker v Wingo,* 407 US 514, 529) and not in violation of public policy *(Hadden v Consolidated Edison Co.,* 45 NY2d 466, 469). Without a doubt, defendant asserts cogent arguments, which deserve our careful attention, as to why this court should scrutinize more closely the growing prosecutorial practice of exacting as a condition to a negotiated plea the waiver of the right to appeal. *(See, People v Ventura,* 139 AD2d 196, 201 [1988].) This case, however, presents an altogether independent issue, which though not addressed by the parties on this appeal, once determined will resolve the question of the reviewability of defendant's sentence despite his express waiver of the right to appeal. That issue is whether a waiver of the right to appeal a judgment operates not only as a waiver of our "law" jurisdiction but also of our interest of justice jurisdiction to review and modify sentences in our discretion.

We now hold that a waiver of the right to appeal a

criminal conviction, entered by a defendant as a condition to a negotiated plea, does not bar that defendant from invoking the unique, historically recognized " 'constitutionalized' " power *(People v Pollenz,* 67 NY2d 264, 268) of this court to review his sentence as a matter of discretion in the interest of justice. In so holding, we are mindful of the fact that recently a different panel of this very court and earlier decisions of our fellow Departments have upheld such waivers and dismissed appeals seeking appellate review of sentences as excessive. *(See, People v Cooks,* 135 AD2d 455 [1st Dept]; *People v Harvey,* 124 AD2d 943 [3d Dept]; *People v Davison,* 108 AD2d 820 [2d Dept].)* Reconsideration of these decisions is warranted, indeed, compelled, by the fact that it does not appear that the effect of these waivers on our sentence review powers has ever been analyzed or even addressed. We take this opportunity to do so now. But first, a brief review of the facts of this case is in order.

On April 26, 1985, defendant pleaded guilty to manslaughter in the first degree to cover an indictment charging him with murder in the second degree. A condition of the plea, which carried a promise of an 8⅓-to-25-year sentence, was that defendant waive his right to appeal the judgment. At the allocution, when the court inquired whether defendant was prepared to waive his right to appeal, defendant responded that he was not. However, after conferring with counsel, defendant then admitted his intent to waive his right to appeal. Defendant was sentenced in accordance with the terms of the negotiated plea. Defendant now seeks review of his sentence as excessive, thereby invoking the interest of justice jurisdiction of this court.

This interest of justice jurisdiction is exclusive to criminal appeals. Thus, while our jurisdiction in civil cases is itself generous in that it permits appellate review of most nonfinal and final orders and judgments pertaining to pretrial and trial proceedings, a reversal or modification must be grounded upon the law (i.e., preserved errors), the facts, or a combination of both. (CPLR 5501 [a], [c].) In criminal cases, on the other hand, while interim appeals are not, except under extraordinary circumstances, permitted (CPL 450.10, 450.20; *Matter of State of New York v King,* 36 NY2d 59, 64), our jurisdiction is nevertheless extremely liberal in that we may reverse or modify, upon the law, the facts or as a matter of discretion in the interest of justice, or a combination of the above. (CPL 470.15 [3].) Even more extraordinary is our explicitly autho-

rized power, when reviewing a sentence in our discretion, not only to adjudge it to be excessive, but to ourselves impose some legally authorized lesser sentence. (CPL 470.15 [6] [b]; 470.20 [6].)

A brief historical review of this power illuminates its invulnerability to the attack presented in this case. The Appellate Division of the Supreme Court of New York came into existence in 1894 (NY Const of 1894, art VI, §§ 1, 2), for the express purpose of exercising appellate jurisdiction over the Trial and Special Terms of the Supreme Court and any legislatively established inferior courts. (*Waldo v Schmidt,* 200 NY 199, 202.)* Soon after its creation and before it was specifically given any express statutory grant of jurisdictional power to reduce sentences, the Appellate Division exercised, as inherently given, the power to review the claimed harshness of sentences in the interest of justice. (*People v Thompson,* 60 NY2d 513, 520, citing *People v Miles,* 173 App Div 179.)

In *People v Miles (supra)* the Appellate Division, Third Department, reasoned that because sentencing was a naturally vested power of the Supreme Court, it was thereby inherently subject to review under the general appellate powers of the Appellate Division. Furthermore, the court said, "any determination of a trial judge or justice which is unjust in its relation to the crime of which the defendant stands convicted is within the power of the Supreme Court [Appellate Division] to correct" *(supra,* at 185). This inherent power to review and correct was subsequently expressly codified in section 543 of the Code of Criminal Procedure, and later in 1971, when the Legislature adopted the current Criminal Procedure Law, that power to review and reduce sentences in the interest of justice was continued in CPL 470.15 (6) (b) and 470.20 (6). Finally, this power, originally recognized as inherent, was deemed "constitutionalized" by NY Constitution, art VI, § 4 (k), which grants to the Appellate Divisions all the jurisdiction possessed by them by statute on the effective date of that article (Sept. 1, 1962), including the jurisdiction given

---

* The Supreme Court of the State of New York originated by statute on May 6, 1691, and continued in existence up to the adoption of the first State Constitution of 1777, in which it was recognized as "existing". *(In re Steinway,* 159 NY 250, 255-257; 28 NY Jur 2d, Courts and Judges, § 3, at 26.) In creating the Appellate Division in 1894, the Legislature was merely vesting it with the appellate jurisdiction previously exercised by the General Term of the Supreme Court. *(People v Pollenz,* 67 NY2d 264, 268.)

them by CPL 470.15 and 470.20. *(People v Pollenz, supra,* 67 NY2d, at 268.)* The *Pollenz* court determined that this jurisdiction may not be legislatively limited or conditioned by law *(supra).*

Neither is this court limited or restricted in the same way the trial court is when it finds a negotiated sentence to be unfair. In *People v Thompson* (60 NY2d 513) the court, after reviewing the history of and noting the expansiveness and uniqueness of our sentence review powers, held that the requirement established in *People v Farrar* (52 NY2d 302) that a trial court must afford the prosecutor an opportunity to withdraw consent to a plea when it finds a negotiated sentence to be excessive, does not apply to the Appellate Division's power to reduce a sentence in the interest of justice (60 NY2d 513, esp 519-521, *supra).* The court based its decision on the fact that the statute at issue in *Farrar* (CPL 220.10 [3], [4]), requiring the consent of the People and the trial court in negotiated pleas, was simply inapplicable to the Appellate Division, which upon a distinctively different and independent statutory basis has the power to review and reduce a sentence in its discretion and in the interest of justice, irrespective of the bargained for terms of the plea. *(People v Thompson, supra,* at 519.)

The court summarized its holding, using words that are equally dispositive of the issue herein, as follows: "In sum, our decision in this case, as in *Farrar,* is dictated by the applicable statutes. The Legislature has provided that the prosecutor's consent to a plea is required at the trial court level *which necessarily permits the prosecutor to impose lawful conditions which the trial court cannot disregard. The Legislature, however, has not seen fit to impose similar restrictions on the Appellate Division's power to reduce a sentence in the interests of justice* and impose a lesser one if a majority of the court concludes that the sentence imposed was unduly harsh under the circumstances." *(People v Thompson, supra,* at 521 [emphasis added].)

The import of these words to the facts herein, where the waiver of an appeal was a condition to the plea, cannot be mistaken. We are entitled to conclude from the *Thompson* holding, as well as from the constitutionally protected nature of our power and duty to review sentences in the interest of justice, that even assuming the voluntary and knowing nature of defendant's waiver, the fact of the waiver does not prohibit the defendant from invoking our interest of justice jurisdic-

tion, nor does it restrict this court from disregarding the waiver and as a matter of discretion reviewing the alleged excessiveness of the sentence.

Our exclusively granted interest of justice jurisdiction to review and modify even lawfully imposed sentences exists precisely to correct unjust sentences, and this review defendant cannot waive. There can be no doubt that when an unjust sentence has been imposed, something in the process of administering criminal justice has gone awry. Equally irrefutable is the fact that this court has not only an interest in seeing that justice is done, but a duty to correct injustices presented under our interest of justice jurisdiction. The State, on the other hand, has no legitimate interest in preserving a sentence that is unjust. The People may have a legislatively validated role in plea negotiations, nearly like a veto power, but they enjoy no such role at the appellate level when it relates to our power to review and modify sentences. *(See, People v Thompson, supra,* 60 NY2d, at 521.)

We hasten to add that we do not view this broad power as giving us license to exercise it in a manner that is "capricious and whimsical, affirming when we feel like it, and reversing when we feel like it." *(People v Kidd,* 76 AD2d 665, 667.) What it does mean is that just as "we do not overstep the line when we exercise our 'interest of justice' powers on the basis of so fundamental a consideration as guilt or innocence" *(supra,* at 667), neither do we overstep it when we exercise our unique powers to review and, if warranted, modify that which next to a determination of guilt has the most significant impact on a defendant—the punishment meted out for his crime.

Neither can the State argue that a reduction of a sentence in the interest of justice undermines the finality of a plea conviction. Since this court itself can impose a legally authorized lesser sentence (CPL 470.20 [6]), not even a remand for resentencing will be required. While we note that the People are apt to have "frustrate[d] * * * expectations" as to what the punishment should be *(People v Thompson, supra,* at 520), we remind them that the occurrence of appellate reduction of a negotiated sentence is "a minimal one, which presumably is taken into account or discounted at the time of the plea negotiations" *(supra,* at 520).

■ A final point to address before reaching the merits is the assertion that the Court of Appeals in *People v Thompson (supra)* impliedly decided that a defendant could waive his

statutory right to appellate review of his sentence at the time he pleads guilty *(supra,* at 520). Law is made not "by what was said, but by what was decided, and what was said is not evidence of what was decided, unless it relates to the question presented for decision." *(People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs.,* 174 NY 417, 447.) A case, therefore, is precedent only as to those questions presented, considered and squarely decided. *(Empire Sq. Realty Co. v Chase Natl. Bank,* 181 Misc 752, 755, *affd* 267 App Div 817, *lv denied* 267 App Div 901.) In *Thompson,* the court was not presented with, nor did it decide, the effect of a waiver on this court's ability to review a sentence in its discretion.

Furthermore, while the dicta of a Court of Appeals decision may carry considerable weight in guiding lower courts in their determinations *(see, e.g., Gimbel Bros. v White,* 256 App Div 439, 442), an extraneous, gratuitous and casually expressed statement, particularly in a case where the issue was neither argued nor factually relevant, can carry no controlling weight. *(Cf., Garofano Constr. Co. v City of New York,* 180 Misc 539, 540, *affd* 266 App Div 960.) Such is the case with respect to the dicta in *Thompson (supra).* After stating that Thompson had a statutory right of appellate review of his sentence, the court casually added that defendant had not waived that right when he pleaded guilty, citing an analogously supportive *People v Williams* (36 NY2d 829), which upheld the waiver of the right to appeal a suppression ruling. The Court of Appeals did not rule in *Williams,* nor has it yet ruled, on the waiver of the right to appeal a sentence. We strongly doubt, particularly in light of the later *Pollenz* decision (67 NY2d 264, *supra)* which noted the "constitutionalized" nature of our power in this area, that the Court of Appeals in *Thompson* meant to foreclose discussion on a question as important as this in such a casual, unelaborated manner, without benefit of full argument. The courts of this State simply do not so offhandedly establish legal principles.

■ This finally brings us to the merits of defendant's argument that his sentence of 8⅓ to 25 years for this manslaughter conviction was unfair. Defendant's argument is wholly unpersuasive. After his initial attempt to stab the decedent during an argument was thwarted, defendant proceeded to walk to a hardware store, where he stole a knife, and returned to the decedent's place of employment, intending to continue his attack. Not finding him there, he searched through the financial district area of Manhattan until he did

find the victim and killed him. These facts make out a strong case for murder in the second degree, which carries with it a sentence penalty ranging from 15 years to life to 25 years to life. The terms of this negotiated plea, reducing the crime to manslaughter in the first degree with a promised sentence of 8⅓ to 25 years, therefore, were very favorable in light of the facts of this crime.

Accordingly, the judgment of the Supreme Court, New York County (Thomas B. Galligan, J.), rendered May 21, 1985, convicting defendant, after a plea of guilty, of manslaughter in the first degree, and sentencing him to an indeterminate term of imprisonment of from 8⅓ to 25 years, is affirmed.

Asch, J. (dissenting). Defendant moved to suppress confessions and out-of-court identifications of two eyewitnesses to the killing of Eugene Curry. After the suppression hearing but before any decision by Criminal Term on his motions, defendant offered to plead guilty to the reduced charge of manslaughter in the first degree in return for a sentence of 8⅓ to 25 years. As a specific part of this plea bargain, the defendant agreed to waive his right to a decision on the suppression motions and also his right to appeal his sentence. Defendant was thereafter sentenced to the promised term.

On this appeal, defendant contends that his waiver of his right to appeal his sentence was ineffective because it was not knowing and voluntary. He also contends that such waivers are void, in any event, as against public policy.

A majority of this court, in affirming defendant's conviction, indicate their agreement with these contentions. While I would also affirm if the merits were to be reached in this matter, I feel that defendant's waiver of his statutory right to appeal his sentence was entirely proper and, accordingly, I would dismiss the appeal herein.

Initially, I note that defendant's waiver was clear and unequivocal. Thus, the court told defendant "[i]t's also a condition of this plea that you waive appeal in this case, do you understand that?" When defendant said "[y]es, Your Honor", the court continued, "[a]re you prepared to do that?", and defendant answered "[n]o, I'm not". However, after an off-the-record conference with his attorneys, defendant agreed to waive his appeal.

Although defendant attributes his first answer to his "initial reluctance", it appears from the record that he simply did not understand what the Judge had meant. Thus, after his first

negative response, one of his lawyers interjected in explanation to defendant, "[h]e's asking you if you are prepared to waive your appeal". After his conference with his attorneys, the misunderstanding was cleared up but, even if defendant's contention of an initial reluctance on his part is correct, the record is clear it was overcome by an unequivocal waiver after the conference with his attorneys.

The Judge advised defendant of his waiver of the right to appeal and the defendant acknowledged he understood. Such inquiry by the court has been found sufficient to waive constitutional rights (see, Boykin v Alabama, 395 US 238; People v Harris, 61 NY2d 9) and, a fortiori, should suffice for waiver of the right to appeal, which is a statutory right. Further, defendant has failed to raise the instant claim in the trial court, nor has he moved to withdraw his guilty plea. Consequently, he cannot now raise this issue on appeal (People v McGourty, 125 AD2d 417).

Defendant further contends that he "may" have believed at the plea that, even without a waiver, his right to challenge his sentence was limited by CPL 450.10 and 450.15, which have now been held to violate the New York State Constitution (People v Pollenz, 67 NY2d 264). The short answer to this is that neither defendant nor his attorneys expressed this as a reason for agreeing to the waiver. In any event, the People sought a waiver of defendant's right to appeal any suppression decision even though, under the circumstances here, an appeal was forfeited (People v Fernandez, 67 NY2d 686). Likewise, the People were entitled to seek and obtain a waiver of his right to appeal his sentence, even though the statute at the time limited such right solely to one to apply for permission to appeal. By so doing, the People insulated themselves from any challenge to the constitutionality of the statutes, certainly an understandable and prudent practice.

Defendant's second contention is that his waiver of the right to appeal his sentence is void as against the public policy of this State. In support of this he cites People v Ramos (30 AD2d 848), where the court struck down the validity of conditioning the defendant's plea upon his forfeiture of his right to appeal. In fact, this 3 to 2 decision of the Second Department held that public policy would be offended if a defendant agreed to waive appeal of any aspect of his conviction. That case, in which, if the plea were vacated, the defendant would have been subjected to a potential death sentence following jury trial, was distinguished, on the facts, by the same Appellate

Division in *People v Irizarry* (32 AD2d 967, *affd* 27 NY2d 856) which, however, upheld an agreement to waive an appeal pursuant to a plea bargain. In any event, *Ramos* (and *Irizarry* to the extent it followed *Ramos)* were overruled implicitly in *People v Davison* (108 AD2d 820) when the Second Department declared: "Defendant made a knowing and intelligent waiver of his right to appeal as a condition of the pleas *(see, People v Gray,* 75 AD2d 826). Under such circumstances the appeals are dismissed" *(supra,* at 821).

The Third Department, in *People v Harvey* (124 AD2d 943, *lv denied* 69 NY2d 746), recently held that a waiver by a defendant of his right to appeal from his sentence would be given effect. In so doing, it noted that it had earlier found in *People v Jandrew* (101 AD2d 90) that, after a plea of guilty, a defendant's right to appeal from a sentence or from the denial of a suppression motion is statutory and not of constitutional dimension, and thus a waiver of appeal from a suppression motion was valid. This holding was reaffirmed by that court in *People v Lucas* (106 AD2d 821) and the Third Department held the same reasoning should apply to a waiver of the right to appeal from a sentence *(People v Harvey, supra,* at 943).

The Fourth Department, in *People v Durant* (101 AD2d 1008), also dismissed a similar appeal, holding that a defendant may properly be held to a waiver of the right to appeal.

This court has most recently joined our sister Departments and expressly held that, where a defendant clearly waives his right to appeal from the sentence, the appeal should be dismissed *(see, People v Cooks,* 135 AD2d 455).

While the Court of Appeals has not explicitly endorsed this view, it impliedly found that waiver of a sentence appeal would be proper. Thus, in *People v Thompson* (60 NY2d 513), the court held that a reduction of a negotiated sentence by the Appellate Division did not mandate a remand to the trial court to afford the prosecutor an opportunity to withdraw consent to the plea. The *Thompson* court noted that defendants have a statutory right to appeal to the Appellate Division's discretionary power to reduce a sentence in the interest of justice, which Thompson "did not expressly waive * * * at the time he pleaded guilty" *(supra,* at 520). The *Thompson* court, in support of this proposition that otherwise appealable issues may be expressly waived, cited *People v Williams* (36 NY2d 829, *cert denied* 423 US 873). There, the Court of Appeals recognized that a waiver of the right to appeal a

decision on a suppression motion, another statutory right, was valid as long as it was knowing and voluntary.

Knowing and voluntary waivers of nonconstitutional rights have never been held to be against public policy by the Court of Appeals. In fact, it has upheld waivers of appellate claims when the waivers were conditions of plea bargains. In *People v Stephens* (52 NY 306, 310-311), an oral agreement by the Attorney-General not to appeal the sustaining of a demurrer to a complaint was held binding. In *People v Esajerre* (35 NY2d 463, 466) and *People v Williams (supra),* the court upheld waivers of the right to appeal denial of suppression motions.

Finally, the failure by the majority to dismiss this appeal outright constitutes a finding by them that defendant's waiver was ineffective and void. However, the procurement by the People of this waiver of the right to appeal the sentence was a *sine qua non* of the plea bargain. Consequently, since the plea bargain was induced by this waiver, the plea must now be vacated *(People v Rice,* 25 NY2d 822, 823).

The People note that they had an overwhelmingly strong case, including defendant's confessions corroborated by a number of eyewitnesses, and would have been willing to try defendant for murder. Instead of risking conviction of murder after trial, by promising to waive appeal of his sentence defendant managed to avoid a life sentence and reduce the minimum term by at least half. Thus, vacatur of the waiver mandates vacatur of the plea and return of the People and defendant to their original positions. Affirmance herein gives defendant the benefit of his plea bargain while simultaneously depriving the People of one of the benefits for which they bargained.

SANDLER and MILONAS, JJ., concur with CARRO, J.; MURPHY, P. J., and ASCH, J., dissent in an opinion by ASCH, J.

Judgment, Supreme Court, New York County, rendered on May 21, 1985, affirmed.