OPINION OF THE COURT
John G. Pericak, J.
Defendants McRobbie and Gannon were arrested in the Town of Henrietta and charged with violating section 1192 (2) and (3), as well as other violations of the Vehicle and Traffic *153 Law. Both entered not guilty pleas to the charges and each defendant’s full driving privileges were suspended pending prosecution pursuant to section 1193 (2) (e) (7) of the Vehicle and Traffic Law.
This court received motions from both defendants requesting an order dismissing the misdemeanor charges of violations of Vehicle and Traffic Law § 1192 (2) and (3) as violative of United States Constitution Fifth Amendment and New York Constitution, article I, § 6 prohibitions against double jeopardy. They argue that by virtue of the suspension of full driver privileges at arraignment, they received punishment for the underlying charges pursuant to Vehicle and Traffic Law § 1192 (2) and § 1193 (2) (e) (7). They also contend that allowing the continued prosecution on the section 1192 (2) and (3) charges would impose successive multiple punishments for the same crime and successive multiple prosecutions for the same offense in violation of United States Constitution Fifth Amendment, New York Constitution, article I, § 6, and CPL article 40. The defense relies primarily on the landmark decision decided by the Supreme Court of the United States in United States v Halper (490 US 435 [1989] [hereinafter referred to as Halper]) and Department of Revenue of Montana v Kurth Ranch (511 US 767 [1994] [hereinafter referred to as Kurth Ranch]).
The People oppose the defense motion with regards to double jeopardy relying heavily on the New York State Court of Appeals decision Matter of Barnes v Toffany (27 NY2d 74 [1970] [hereinafter referred to as Toffany]). In their reliance on Toffany, the People argue that the suspension or revocation of the privilege of operating a motor vehicle is essentially civil in nature and is a remedial regulatory measure characteristically free of punitive criminal intent and solely for the use of protecting the public during the course of the resolution of each matter.
Under Vehicle and Traffic Law § 1193 (2) (e) (7), after the filing of an accusatory instrument charging a defendant with an alleged violation of Vehicle and Traffic Law § 1192 (2), the court is required to make two findings at an arraignment before it can suspend a license. The first finding must be that the accusatory instruments conform to the provisions of CPL 100.40. The second finding must be that reasonable cause exists to believe that the defendant operated a motor vehicle with .10% or more by weight of alcohol in his or her blood. (Vehicle and Traffic Law § 1193 [2] [e] [7] [b].) The defense would *154 label this proceeding as punishment, thereby triggering the alleged violation of defendant’s rights regarding double jeopardy.
With roots in Greek and Roman law, our double jeopardy rights are protected by both the Federal and State Constitutions and New York statutory provision. Included are the protections against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and protections against multiple punishments for the same offense. (North Carolina v Pearce, 395 US 711 [1969].) This guarantee is fundamental to our system of justice and consequently applies to the States through the Due Process Clause of the Fourteenth Amendment. (Benton v Maryland, 395 US 784 [1969].) The "jeopardy” with which the Fifth Amendment is concerned is the risk "traditionally associated with actions intended to authorize criminal punishment to vindicate public justice”. (United States ex rel. Marcus v Hess, 317 US 537 [1943].) This risk may also be present in certain "civil proceedings” that are "essentially criminal”. (Helvering v Mitchell, 303 US 391 [1938].) The dichotomy of civil and criminal proceedings and their definition has led our courts into an evolution of double jeopardy interpretations when it comes to the third phase of the proscriptions: those prohibiting multiple punishments for the same offense. The origin of the civil/ criminal argument was given its preview in Helvering v Mitchell (supra [hereinafter referred to as Mitchell]) in 1938. In Mitchell, the defendant was acquitted of charges that he willfully attempted to evade and defeat income tax by fraudulently misstating certain items on his income tax return. When the Commissioner of Internal Revenue then brought an action to recover a substantial monetary penalty for fraudulent avoidance of income tax, the defendant argued that double jeopardy barred the assessment of a monetary penalty. The Court concluded that the monetary penalty was merely a remedial civil sanction authorized by Congress and the payment of fixed or variable sums of money are sanctions that have long been recognized as enforceable by civil proceedings. (Supra, at 400.)
Thus, at the outset of the double jeopardy dispute was the underlying question of whether the proceeding was intended to be, or by its nature is, necessarily criminal and punitive or civil and remedial. Courts, in reading Mitchell (supra) were forced to decide whether or not the Double Jeopardy Clause provided protection only against repeat criminal punishments for the same action. This line of thinking created a two-prong test set forth by the Supreme Court in United States v Ward (448 US 242 [1980] [hereinafter referred to as Ward]).
*155 The first prong of the Ward test was to determine whether Congress, in establishing the penalizing mechanisms, indicated either expressly or impliedly a preference for one label or another. (Supra, at 248.) The second prong of the Ward test was, where Congress has indicated an intention to establish a civil penalty, to inquire further whether the statutory scheme was so punitive either in purpose or in effect as to negate that intention. In regard to the second step of the inquiry, " 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such ground’ ”. (Supra, at 249.) In determining whether "the clearest proof’ exists, the Supreme Court has suggested the use of the seven-point test found in Kennedy v Mendoza Martinez (372 US 144 [1963]). (Supra.) The application of this test was used pre-Halper (supra) to decide whether or not Congress had provided a sanction so punitive as to transform what was clearly intended to be a civil remedy into a criminal penalty, and is not as helpful in a Halper situation which was to decide if a clearly civil sanction may be so divorced from its remedial goal that it constitutes "punishment”.
The two-prong Ward analysis was most visible in United States v One Assortment of 89 Firearms (465 US 354 [1984] [hereinafter referred to as Firearms]) in which the Supreme Court concluded that the forfeiture mechanism of the Gun Control Act of 1968 is "not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature” (supra, at 366) aimed at "[kjeeping potentially dangerous weapons out of the hands of unlicensed [gun] dealers”. (Supra, at 364.) In this case, the court noted that Congress’ intent was clearly demonstrated by the procedural mechanisms it established in enforcing forfeitures against the statute. "By creating such distinctly civil procedures for forfeitures under § 924 (d), Congress has indicatefd] clearly that it intended a civil, not a criminal, sanction.” (Supra, at 363.)
The civil statute in the Firearms case (supra) was noted to cover a broader range of conduct than proscribed by the criminal provisions, because the sanction embodied in the civil proceeding was not limited to criminal misconduct. The forfeiture remedy was not said to be coextensive with the criminal penalty. Other forfeiture-type proceedings using the Ward analysis have led to the same result. (One Lot Emerald Cut Stones v United States, 409 US 232 [1972] [" '(forfeiture of goods or their value and the payment of fixed or variable sums *156 of money are other sanctions which have been recognized, enforceable by civil proceedings’ ”]; see also, Austin v United States, 509 US 602, 621 [1993] ["the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society”].) To say that the courts have placed a blanket double jeopardy denial on all forfeiture cases would be an exaggeration. There seemingly must be a relation between the sanction imposed and a corresponding benefit to society. (See, Plymouth Sedan v Pennsylvania, 380 US 693 [1965] [hereinafter referred to as Plymouth Sedan] [where the Court rejected the government’s attempt to extend the contraband reasoning to conveyances used to transport illegal liquor].) In Plymouth Sedan, it was noted that "[t]here is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects [the defendant] to its possible loss”. (Supra, at 699.) To further this line of thinking, the Second Circuit Court of Appeals has noted that " '[w]here the seized property is not itself an instrumentality of crime * * * and its total value is overwhelmingly disproportionate to the value of the [contraband] involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature’ ”. (United States v Amiel, 995 F2d 367, 369 [2d Cir 1993], citing United States v 38 Whalers Cove Dr., 954 F2d 29 [2d Cir 1992].)
Without even turning to Halper and Kurth Ranch (supra), it would seem highly unlikely that Vehicle and Traffic Law § 1193 (2) (e) (7) would pass even a Ward analysis. First, the Legislature provides no labels in defining this statute as a civil or criminal proceeding. The statute is located within the ambit of the driving while intoxicated provisions of the Vehicle and Traffic Law. Further, it makes no provision, even remotely, for a civil or administrative proceeding. It is quite apparent that the statute is to be enforced by a judicially ordered suspension in the context of the already existing criminal proceeding. (See, Firearms, 465 US, supra, at 363.) Likewise, in looking at the statute’s origin, it would not be far-reaching to conclude that the main effect of the statute is for deterrence and punishment (press release of Senator Norman J. Levy, chairman, NY St Senate Comm on Transp, Aug. 2, 1994) (mem filed with Senate Bill S 5679, A, "prompt suspension not only serves as a general deterrent by mandating the swift and certain penalties, but also keeps the potentially dangerous driver off the road during an adjudication of the criminal charge”). Thus, by mandating *157 the application of this sanction in such a close relation to the criminal proceeding, the Legislature has created serious doubt that the sole purpose of the statute is remedial. This is where the People’s reliance on Toffany (supra) is fatal. Toffany involved (1) separate conduct for the suspension pending prosecution and the final suspension for the crime; (2) an administrative civil proceeding specifically denoted by the Legislature for achieving that purpose, adjudicated by the Commissioner of Motor Vehicles; and (3) the first administrative suspension in Toffany was permissive unlike the current procedure which is mandatory once the aforesaid findings are made. Equally debilitating to the People’s argument is the fact that, unlike the forfeiture cases where contraband is removed from being a potentially dangerous element in society, the suspension of a driver’s license (like the forfeiture of the automobile in the Plymouth Sedan case [supra]) does not guarantee that a drunk driver will be kept off the road. As this court is aware, like so many other jurisdictions in this State, most people charged with driving while intoxicated are given appearance tickets and do not need to appear for an arraignment for sometimes up to three weeks from the date of the incident. Further, the statute itself gives an opportunity for an arraignment to be adjourned while the motorist makes a hardship application. (See, Vehicle and Traffic Law § 1193 [2] [e] [7] [e].) Likewise, after 30 days, the motorist may be issued a conditional license. (Vehicle and Traffic Law § 1193 [2] [e] [7] [d].) However, assuming arguendo that the People’s argument that the statute is remedial has merit, this court must decide whether or not it can be taken one step further to pass a Halper analysis.
The Supreme Court’s decision in Halper (supra) turned the Court’s attention away from deciding whether or not a proceeding was criminal and punitive and/or civil and remedial, instead focusing on the issue of whether sanctions that were admittedly civil could be so divorced from any remedial goal that they constituted punishment for the purposes of double jeopardy analysis. Thus, the question is not whether the license suspending statute is civil or criminal, but rather whether it is punishment.
The People maintain that Halper and Kurth Ranch (supra) involve separate proceedings following a conviction. They also point out that neither case questioned the authority of the government to impose remedial sanctions in separate proceedings and that these cases were only being asked to determine at what point the proposed additional financial sanction consti *158 tuted punishment. Finally, the People would stress only a literal and limited application of the Halper and Kurth Ranch cases.
In considering the People’s caution regarding a reliance on dicta, this court will note that "[principles are not established by what was said, but by what was decided, and what was said is not evidence of what was decided, unless it relates to the question presented for decision”. (People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs., 174 NY 417, 477 [1903].) A case therefore is precedent only as to those questions presented, considered and squarely decided. Furthermore, while dicta of a Court of Appeals decision may carry considerable weight in guiding lower courts in their determinations, an extraneous, gratuitous and casually expressed statement, particularly in a case were the issue was neither argued nor factually relevant, can carry no controlling weight. (People v Bourne, 139 AD2d 210, 216 [1st Dept 1988].)
It is apparent that Halper’s and Kurth Ranch’s exhaustive analysis contains more than mere dicta or "gratuitous and casually expressed statements” and should be given considerable weight by this court. However, there still remains the factual discrepancies between section 1193 (2) (e) (7), Halper (supra) and its predecessors. More specifically, we must resolve the following divergence: (1) that Halper and Kurth Ranch (supra) both involved monetary fines and (2) that the civil proceeding deemed criminal under the prior Ward analysis or as punishment under the Halper and Kurth Ranch analyses came after the criminal prosecution.
In an often-quoted phrase from Halper, the Supreme Court noted: "In making this assessment, the labels 'criminal’ and 'civil’ are not of paramount importance.” (490 US, supra, at 447.) Halper goes on to state (at 448): "it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term”.
The Court made it clear that whether a particular sanction constitutes punishment should not be determined from the defendant’s perspective because "for the defendant even remedial sanctions can carry the sting of punishment”. (Supra, at 447, n 7.) Rather "it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated”. (Supra.)
*159 We must look at the other factors for this "purpose” regard-ing the present statute because even as the statute may have a deterrent effect, it does not automatically deserve a label of punishment. Most notably, section 1193 (2) (e) (7) makes its sanction conditioned on the commission of a crime. The sanction is not imposed until after the motorist is arrested for the precise conduct that gives rise to the suspension in the first place, that is, a violation of section 1192 (2). (See, Kurth Ranch, 511 US, at 781, supra.)
The question now arises of whether the Court’s reasoning in Halper (supra) applies when the sequence of the proceedings is reversed, or more specifically, when an individual is prosecuted criminally after he has already been subject to a civil sanction for the same conduct and that civil sanction is of such a magnitude that it constitutes "punishment” for the purposes of double jeopardy analysis. While other circuits have ruled that Halper applies when a civil sanction precedes the criminal prosecution (see, e.g., United States v Hudson, 14 F3d 536 [10th Cir 1994]; United States v Sanchez-Escareno, 950 F2d 193 [5th Cir 1991]), the Second Circuit Court of Appeals declined to decide on this issue until its recent decision in United States v Morgan (51 F3d 1105 [2d Cir 1995]). In Morgan, the court noted: "we are firmly persuaded that the shield of double jeopardy remains in place regardless of the happenstance of whether the civil proceeding or criminal prosecution arising from the same offense comes first * * * In short, double jeopardy protection may be claimed by a defendant whose indictment follows the imposition of a punitive civil sanction for the same offense.” (Supra, at 1114.)
If in fact a civil sanction may be fairly characterized "only as a deterrent or retribution” then its exaction before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards. (United States v Schloss & Co., 724 F Supp 1123 [SD NY 1989].) Therefore, it is this court’s conclusion that the order of the proceedings is irrelevant in this analysis.
Finally, both Halper and Kurth Ranch (supra) involve payment of fines and/or taxes as the sanction in question. Vehicle and Traffic Law § 1193 (2) (e) (7) involves a common nonmonetary sanction, a suspension of a driving privilege. While some of the language used in Halper clearly discusses calculations and monetary figures, the comment is not so illogical to assume that the Court’s rationale could serve a broader purpose. Halper noted (at 448-449): "A defendant who already has been *160 ■punished in a criminal prosecution may not be subject to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution.” (Emphasis supplied.)
It would seem that the Court did not wish to limit their language and would apply this rationale to any civil sanction, whether monetary or not, to the extent that it serves only as a deterrent or retribution. Thus, it is the purpose actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated. (United States v WRW Corp., 986 F2d 138 [6th Cir 1993].)
To reenforce this line of thinking, the Supreme Court has further held in Austin v United States (509 US 602, 621, supra) that: "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.” This line of reasoning led to the finding that one of the most common monetary penalties, a tax, was found to be punishment in the Kurth Ranch case (supra).
In application, section 1193 (2) (e) (7), while having some remedial purposes, cannot reasonably be labeled as "solely” to serve a remedial purpose. Also, as the Supreme Court noted in Austin, the fiction that "the thing is primarily considered the offender” was one which rested on the notion that the owner who allows his property to become involved in an offense has been negligent. (509 US, at 615-616, supra.) In our situation, the removal of "the thing” (or the driver’s license) cannot be said solely to relate to the State’s objective of removing drunk drivers from the road because the lack of a driver’s license will not guarantee a remedy to the problem needing correction, that is, the behavior of the drunken driver.
Thus, by application of either analysis set out by the Supreme Court, further prosecution of these defendants under Vehicle and Traffic Law § 1192 (2) would be barred.
The defendants ask further that the double jeopardy analysis also apply to the charge of driving while intoxicated under Vehicle and Traffic Law § 1192 (3). This argument however must fail. In order to survive, this argument must pass what has come to be known as the "Blockburger test”. In Block-burger v United States (284 US 299, 304 [1931]), the Court held that: " 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either stat *161 ute does not exempt the defendant from prosecution and punishment of the other.’ ”
Thus, the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. (Grady v Corbin, 495 US 508 [1990].) This is not an "actual evidence” or "same evidence” test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. (Supra, at 521.)
The People’s proof in a section 1192 (2) case rests primarily on the introduction of some sort of chemical analysis constituting a per se violation, while the proof offered in the People’s case of Vehicle and Traffic Law § 1192 (3) is invariably different. The proof in a section 1192 (3) case usually involves whether or not the defendant’s consumption of alcohol has rendered him incapable of employing the physical or mental abilities needed in order to operate a vehicle as a reasonable and prudent driver. (People v Cruz, 48 NY2d 419 [1979].) By virtue of the above, this argument fails the Blockburger test and the section 1192 (3) charge against these defendants shall remain in full force and effect.
Based on the foregoing, the charges of section 1192 (2) against the defendants are dismissed and these matters will be set for further proceedings on the remaining charges including section 1192 (3).