**MAGRUDER, Collector of Internal Revenue, v. SAFE DEPOSIT & TRUST CO. OF BALTIMORE.**

No. 4795.

Circuit Court of Appeals, Fourth Circuit.

July 26, 1941.

Arthur L. Jacobs, Sp. Asst. to the Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for appellant and cross-appellee.

Stuart S. Janney, Jr., of Baltimore, Md. (Charles McH. Howard, of Baltimore, Md., on the brief), for appellee and cross-appellant.

Before PARKER, DOBIE and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

The Safe Deposit and Trust Company of Baltimore (hereinafter called the taxpayer) brought a civil action against M. Hampton Magruder, United States Collector of Internal Revenue for the District of Maryland (hereinafter called the Collector), for the refund of $42,810.30, representing an alleged over-payment by the

---

taxpayer of income taxes for the year 1935. Judge Coleman, in the District Court, sitting without a jury, entered judgment in favor of the taxpayer. From this judgment the Collector appealed to this Court. In computing the amount recoverable, however, Judge Coleman, against the contention of the taxpayer, adopted a particular method for determining the allowable capital net loss; and, from this part of the judgment, a cross-appeal to this Court has been taken by the taxpayer. Since we believe that Judge Coleman erred by including the taxpayer within the class for members of which a statutory exemption is granted, it thus follows that the taxpayer becomes entitled to no refund at all. This, of course, makes it quite unnecessary for us to consider the question raised on the cross-appeal.

The taxpayer is a Maryland corporation. Unquestionably, its principal business consists in managing trusts and estates and in acting as fiduciary and agent under certain circumstances for both individuals and corporations. Also, it acts as receiver for corporations and as transfer agent, registrar and depositary under corporate re-organizations. According to the opinion of Judge Coleman:

"In the course of its business it receives deposits of money of the following types: (1) deposits of funds from trusts and estates that it manages; (2) deposits made for special purposes by individuals; (3) sinking fund deposits under bond indentures; (4) deposits for the payment of interest, dividends and principal on corporate bonds and stocks; and (5) deposits received as fiscal agent for various individuals and corporations." 34 F.Supp. 199, 200.

The applicable federal statute, under which the taxpayer claims the refund in question, is Section 117(d) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 708:

"Capital Gains and Losses

\*   \*   \*   \*   \*   \*

"Limitation on Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. If a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the re-

ceipt of deposits, sells any bond, debenture, note, or certificate or other evidence of indebtedness issued by any corporation (including one issued by a government or political subdivision thereof), with interest coupons or in registered form, any loss resulting from such sale (except such portion of the loss as does not exceed the amount, if any, by which the adjusted basis of such instrument exceeds the par or face value thereof) shall not be subject to the foregoing limitation and shall not be included in determining the applicability of such limitation to other losses. \* \* \*"

The only question which we have to consider is whether the taxpayer is "a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits." Judge Coleman answered this question in the affirmative. We think it should be answered in the negative. We entertain no doubt that the taxpayer is a "trust company incorporated under the laws" of Maryland; but we do not think it can qualify under the second and equally essential clause of the exempting statute: "a substantial part of whose business is the receipt of deposits". The general rule seems to be well settled that the burden of proving that one comes within the terms of an exemption statute rests upon the taxpayer. White v. United States, 305 U.S. 281, 284, 292, 59 S.Ct. 179, 83 L.Ed. 172; South Carolina Produce Ass'n v. Commissioner, 4 Cir., 50 F.2d 742. We think the taxpayer herein has not been successful in doing this.

In interpreting the above-quoted exempting clause of the statute, Judge Coleman dwelt at some length upon an analytical interpretation of the words "substantial" and "deposits". We think he gave too broad a definition to the word "deposits", as that term is used in the statute, particularly when he included in the term deposits made by the trust department of the taxpayer with its alter ego, the banking department of the taxpayer. Even under an analytical approach to the question in issue, we believe that the judgment should be reversed, though we prefer to emphasize a somewhat different approach. In this connection, we might point out that in different backgrounds, courts have usually given a more restricted interpretation of the word "deposits" than was given by Judge Coleman.

See Appeal of Metropolitan Life Ins. Co., 310 Pa. 17, 164 A. 715, 86 A.L.R. 1301; Pascagoula Nat. Bank v. Federal Reserve Bank of Atlanta, D.C.N.D.Ga., 3 F.2d 465, 466, affirmed 5 Cir., 11 F.2d 866, certiorari denied 271 U.S. 685, 46 S.Ct. 637, 70 L.Ed. 1151; Commonwealth v. Tradesmen's Trust Company, 250 Pa. 383, 95 A. 578; State v. Dunbar State Bank, 119 Neb. 763, 230 N.W. 687; In re Brandywine Bank's Estate, 1 Chest. Co. Rep., Pa., 431; Gimbel Bros. v. White, 256 App.Div. 439, 10 N.Y. S.2d 666.

It is not without importance, we think, that the taxpayer has consistently advertised in the Baltimore newspapers during 1935 (the tax year in question) that its activities were confined to those of a trust company, and not those of a bank. Taxpayer, indeed, seems to have taken special glory in this. The following extracts are taken from such advertisements by the taxpayer:

"For nearly 60 years Safe Deposit and Trust Company of Baltimore has devoted its entire forces to managing and conserving property exclusively."

"The Oldest Trust Company in Maryland Has Nothing to Sell but Service. * * * It has no securities to sell, no banking to divide attention—no interest but the successful management of property entrusted to its care."

"A Trust Company—Not a Bank. * * the company has limited its activities to this one business. It has never entered general banking, selling securities, underwriting or any other outside business because it feels that by specializing the whole effort of its highly trained organization it would justify faith in the old proverb that 'it is better to do one thing and do it well.'"

Nor it is without significance that the taxpayer was not, during 1935, a member of the Baltimore Clearing House.

Some brief comment on the history of the statute in question is informative and helpful. The bill which became the Revenue Act of 1934 (H. R. 7835) contained no exemption as to capital losses, such as the exemption provided in Section 117(d), when the bill was introduced in, and passed by, the House of Representatives. In the hearings on the bill before the Senate Committee on Finance, however, strong protests were made on behalf of banks and banking associations that the limitation on capital losses should not apply to banks because corporate and government bonds were the stock in trade of banks; because banks invested in bonds largely for the interest to be realized thereon rather than for speculative purposes; because banks seldom realized gains on the sales of such securities but frequently incurred losses; because a large part of the investments of banks is in government securities. For these reasons, it was urged, banks should not be placed in the same class as other taxpayers who sought to realize a profit on the purchase and sale of securities, especially bonds. The debates before Congress seem to indicate that in the exempting statute, trust companies were to be included if, but only if, such trust company carried on a banking business as a material part of its activities. This, we believe, is what Congress intended by the clause "a substantial part of whose business is the receipt of deposits", for the word "deposits", we think, was used in the ordinary, commercial sense.

We do not think it is necessary to discuss at length the etymology or the analytical definition of the word "substantial" in the exempting clause. It should be noted, though, that this clause uses the terminology "a substantial part" and does not use the terminology a substantial amount. This, we think, clearly indicates that Congress used the word "substantial" in a relative rather than in an absolute or arbitrary sense.

We believe that a fair and essentially accurate account of the taxpayer's activities during the tax year 1935, is contained in the following extract from the Collector's brief:

"The taxpayer's income during 1935, according to source, was as follows:

| | | |
|---|---|---|
| Trust Commissions............. | $ 864,844.54 | 65.81% |
| Commissions from general department ...................... | 42,703.05 | 3.24% |
| Safe Rents ...................... | 20,768.00 | 1.58% |
| Storage ...................... | 15,086.65 | 1.14% |
| Interest ...................... | 189,740.01 | 14.43% |
| which includes interest from Government securities of about ............... 69,251.98 | | (4.33%) |
| Mortgage and collateral loans ................ 107,632.01 | | (8.19%) |
| Income from Permanent Investments .......................... | 180,977.93 | 13.77% |
| | $1,314,120.18 | |

"The taxpayer's balance sheets, as of December 31, 1934, and 1935, show assets and liabilities as follows:

| Item | As of Dec. 31, 1934 | As of Dec. 31, 1935 |
|---|---|---|
| **ASSETS** | | |
| Cash | $ 6,626,537.25 | $11,182,081.36 |
| Permanent Investments | 3,474,261.70 | 3,272,495.38 |
| U. S. Bonds and Certificates | 2,073,750.01 | 2,314,812.50 |
| Collateral Loans | 1,250,273.75 | 1,006,307.16 |
| Mortgage Loans | 566,967.56 | 374,467.35 |
| Loans secured by Life Insurance Policies | 517,800.80 | 504,515.40 |
| Bills Receivable | 3,275.00 | 1,585.00 |
| Payments awaiting Distribution | 59.35 | 1,303.97 |
| Interest Accrued | 4,216.96 | 2,353.01 |
| Customer's Liability on Letters of Credit | —— | 11,350.00 |
| Sundry Accounts | 42,329.63 (5 accts.) | 7,889.63 (1 acct.) |
| Lot, Building and Vaults | 275,000.00 | 275,000.00 |
| Other Real Estate | —— | 3,427.13 |
| Total | $14,834,472.01 | $18,957,587.89 |

| Item | As of Dec. 31, 1934 | As of Dec. 31, 1935 |
|---|---|---|
| **LIABILITIES** | | |
| Trust Balances: | | |
| Principal and Income | $ 2,682,761.48 | $ 4,847,094.61 |
| Special Deposits | 102,072.83 (45 accts.) | 424,967.07 (42 accts.) |
| Sinking Funds Accounts | 137,081.49 (19 accts.) (8 depositors) | 101,925.91 (13 accts.) (5 depositors) |
| Coupon and Dividend Accounts | 344,165.90 (42 accts., 31 depositors) | 270,571.98 (41 accts., 33 depositors) |
| Fiscal Accounts | 4,101,728.46 (9 accts., 7 depositors) | 6,117,294.14 (9 accts., 7 depositors) |
| Deposits in Trust | 1,114,460.36 (19 accts., 13 depositors) | 820,363.87 (16 accts., 13 depositors) |
| Reserve for Taxes | 142,641.17 | 117,862.84 |
| Reserve for Losses on Loans | 64,000.00 | 64,000.00 |
| Letters of Credit Guaranteed | —— | 11,350.00 |
| Capital Stock | 2,000,000.00 | 2,000,000.00 |
| Surplus | 3,000,000.00 | 3,000,000.00 |
| Undivided Profits | 1,145,560.32 | 1,182,157.47 |
| Total | $14,834,472.01 | $18,957,587.89 |

"The 'Coupon and Dividend Accounts' shown on taxpayer's balance sheet represent deposits made with the taxpayer as agent for the purpose of paying coupons or dividends payable by various corporations. Five of these accounts were subject to withdrawal by check for paying such coupons or dividends.

"The 'Sinking Funds Accounts' shown on taxpayer's balance sheet represent deposits made with taxpayer as trustee of sinking funds under bond indentures or other agreements.

"The 'Special Deposits' shown on taxpayer's balance sheet represents monies deposited with taxpayer, under which taxpayer acted as agent of the depositor in carrying out the purposes of the deposit. These deposits were payable on demand subject to the order of the depositor, but were not subject to check. The taxpayer had forty-five of these accounts at the beginning of 1935, and forty-two at the end.

"The 'Deposits in Trust' shown on the taxpayer's balance sheet represent deposits made with the taxpayer for certain specific purposes under which the taxpayer acts as agent of the depositor to carry out the purpose for which the deposit was made.

"The 'Fiscal Accounts' shown on taxpayer's balance sheet represent deposits made with taxpayer as fiscal agent for various corporations. These amounts were payable on demand. Four of these accounts were subject to withdrawal by check.

"The 'Trust Balance Principal' and the 'Trust Balance Income' shown on taxpayer's balance sheet represent the cash principal and income of the trust estates of which taxpayer is trustee.

"The Special Deposits, the Sinking Funds Accounts, the Coupon and Dividend Accounts, the Fiscal Accounts, and the Deposits in Trust maintained by the taxpayer aggregated one hundred and thirty-four in number and $5,799,509.04 in amount at the beginning of 1934; and one hundred and twenty-one in number and $7,735,122.97 in amount at the end of 1935. Of these amounts the Atlantic Coast Line Railroad Company and six affiliated corporations maintained twenty-five accounts at the beginning of the year aggregating $3,071,361.21, and at the end of the year those affiliated corporations maintained twenty accounts aggregating $6,632,454.95. Of the total fiscal accounts at the beginning of 1935, the aforementioned affiliated corporations maintained six accounts aggregating $3,795,207.60. Of the total fiscal accounts at the end of 1935, the affiliated corporations maintained six accounts aggregating $5,820,620.99.

"For the year 1935, the taxpayer paid $26,000 in interest on two accounts maintained with it. No interest was paid on any of the other accounts with taxpayer.

"At the end of 1935, taxpayer had forty mortgage loans outstanding. No new mortgage loans were made by taxpayer during 1935. Since some of these loans were to the same person or groups of persons, there were only thirty-two different persons or groups of persons to whom the loans were made. Some of these loans were made in connection with the trusts and agencies managed by the taxpayer and on the security of property in the trusts.

"At the end of 1935, taxpayer had outstanding fifty-five collateral loans, some of which were made to the same person or group of persons. Some of these loans were made to persons connected with the trusts managed by the taxpayer and in some cases the collateral was an interest in the trust fund."

[3] In the light of this abstract, we feel that the taxpayer here was not the type of institution which Congress intended to include within the exemption as to capital losses. The taxpayer did not receive deposits from the general public; the taxpayer was essentially a trust company, carrying on the activities thereunto appertaining; the deposits which it received were usually made in connection with its activities as a trust company. Apart from the deposits made by the trust company of the taxpayer with its own banking department, the other deposits received were peculiar in character and appear to have been limited to a few favored corporations. They were clearly not the ordinary commercial deposits which banks receive. A careful study of the extract from the Collector's brief, set out above, confirms our view that the taxpayer was quite without the class intended to be exempted by Congress.

The briefs of the taxpayer dwell at some length on the legality, under the Maryland law, of deposits made by the trust department of a trust company in the banking department of this same trust company. A good deal is said, too, as to the nature and legal incidents of the relation thereby created. To us, these considerations do not seem to be vital. We think it is quite clear that Congress never intended that an institution which was a trust company, "only that and nothing more", could by such a device, somewhat tantamount to pulling itself up by its own bootstraps, change its nature from a bona fide trust company, which is outside the statutory exemption, to a trust company "a substantial part of whose business is the receipt of deposits", which is within the statutory exemption.

The record and briefs in this case also contain some rather nice problems in bookkeeping and accounting. Yet in the light of our approach to the instant question, we think it would not be helpful to prolong this opinion by discussing these problems. The decision of this Court in Staunton Industrial Loan Corporation v. Commissioner of Internal Revenue, 4 Cir., 120 F.2d 930, decided June 10, 1941 is quite in line with the decision which we have reached in the instant case. True, in the Staunton Industrial Loan Corporation case, the statute in question was a different one; and, under that particular statute, we held that the Staunton Loan Corporation was "a bank" and, thus, came within the particular statutory exemption. Yet we are here applying the same interpretative technique that we used in the Staunton Industrial Loan Corporation case, which might be called a practical, commercial, functional approach. In both of these cases, it seemed to us preferable to use such a technique rather than to base our decision on mere analytical or purely verbal analyses of the terms used in the statutes.

For the reasons indicated above, the judgment of the District Court is reversed and the cross-appeal is dismissed.

Reversed.