# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2012

No. 11-60845
Summary Calendar

Lyle W. Cayce
Clerk

FREDERICK D. TODD, II; LINDA D. TODD,

Petitioners–Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent–Appellee

Appeal from the United States Tax Court
USTC No. 26378-06

Before SMITH, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Petitioners–Appellants Frederick and Linda Todd appeal the decision of the United States Tax Court that a purported $400,000 loan to Frederick was taxable income (and not a loan) and therefore found the Todds liable for both income tax deficiency and a penalty under I.R.C. § 6662(a). Because the Tax Court did not clearly error in finding that the purported $400,000 loan was income nor in finding that the Todds had failed to prove their affirmative defense to the penalty, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60845

## I. FACTUAL AND PROCEDURAL BACKGROUND

Frederick Todd is the sole shareholder, director, and president of Frederick D. Todd II, M.D., P.A. (the "Corporation"), a Texas professional association for Frederick's neurosurgery practice. In August 1995, the Corporation became a member of a union, which allowed the Corporation to participate in a death-benefits-only plan through the American Workers Benefit Fund Trust ("AWBF"). The death-benefits-only plan provided death benefits of up to eight times an employee's annual salary with a cap at $6 million. To fund these obligations, AWBF took out life insurance policies in the same amount of the death benefit for each of the Corporation's employees from Southland Life Insurance Company ("Southland"). Finally, to continue the eligibility for the death benefits, the Corporation had to make annual payments to AWBF roughly equal to the amount AWBF owed to Southland in combined premiums for the Corporation's employees. Frederick had a $6 million death benefit with his wife Linda named as the beneficiary. In December 2000, the Corporation changed local union affiliation and resultantly transferred its AWBF plan to United Employee Benefit Fund Trust ("UEBF") on the same terms and with the same relationship with Southland.

Under the terms of the UEBF plan, UEBF trustees could, upon a showing of serous financial hardship, make loans to a plan participant up to the accrued equity in his plan. After Frederick inquired to UEBF and after UEBF consulted with Southland, UEBF informed Frederick that his maximum available distribution from the plan was $400,000. In July 2002, Frederick formally applied to UEBF for a $400,000 loan/distribution from his plan due to "unexpected housing costs." UEBF approved Frederick and secured a $400,000 loan from Southland, but after realizing that Southland was going to charge UEBF nearly 5% interest on the loan, UEBF decided that such an arrangement was unacceptable. Instead, UEBF with Frederick's consent decided to reduce

2

No. 11-60845

the value of the life insurance on Frederick by $400,000 (i.e., a partial surrender), which left UEBF's policy on Frederick's life with a $5.6 million face value. In September 2002, UEBF issued Frederick a check for $400,000 with "participant loan" noted on the memo line. The issuance of the $400,000 check coincided with the last payment to UEBF that the Corporation would make.

Under the terms of the UEBF's trust agreement with the Corporation, UEBF was supposed to secure any loan to a plan participant before making any distribution. Such a note was also required to establish a quarterly payment schedule and bear a reasonable rate of interest. In February 2003, UEBF decided that it needed a promissory note from Frederick. In March 2003, Frederick signed a note for $400,000 to UEBF. That note bore a 1% interest rate and provided for quarterly payments by Frederick of approximately $20,500 until the note was paid off. The note also provided a "dual repayment mechanism," which allowed UEBF to deduct any outstanding balance on the note from any later distribution to Frederick. In practice, that mechanism allowed UEBF to deduct any remaining balance owed on the note from any death benefits owed to Linda upon Frederick's death. As noted above, the Corporation ceased its payments to UEBF in late 2002; similarly, Frederick never made any payments on the note.

The Todds filed their 2002 and 2003 tax returns with the IRS in July 2005. The IRS noted unrelated deficiencies in the Todds' returns for 2002 and 2003, which the Todds challenged in the Tax Court. During the course of its investigation, the IRS discovered the $400,000 distribution from UEBF to Frederick and amended its deficiency charges to include deficiencies caused by the non-reporting of the $400,000 as income. The Tax Court applied a multi-factored approach to the determination of whether the $400,000 constituted a loan and determined that it did not. It therefore concluded that the Todds were deficient in 2002 and found a penalty applicable for the same year.

No. 11-60845

## II.  STANDARD OF REVIEW

We review decisions of the Tax Court under the same standard as district court decisions: legal conclusions are reviewed de novo; factual findings are reviewed for clear error.  *Terrell v. Comm'r*, 625 F.3d 254, 258 (5th Cir. 2010). Both "whether a certain transaction constitutes a loan for income tax purposes" and whether taxpayers "acted with reasonable cause and in good faith in making a substantial understatement of tax liability" are factual issues reviewed for clear error.  *Green v. Comm'r*, 507 F.3d 857, 871 (5th Cir. 2007) (reasonable cause); *Moore v. United States*, 412 F.2d 974, 978 (5th Cir. 1969) (loan).  Clear error only exists where we are "left with the definite and firm conviction that a mistake has been made."  *Terrell*, 625 F.3d at 258 (internal quotation marks omitted).

## III. DISCUSSION

### A.    The $400,000 "Loan"

A loan does not "constitute income [under the Internal Revenue Code] because whatever temporary economic benefit the borrower derives from the use of the funds is offset by the corresponding obligation to repay them." *Moore*, 412 F.2d at 978.  The central inquiry for determining if a transaction is a bona fide loan for tax purposes is whether it is "the intention of the parties that the money advanced be repaid."  *Id*.  As we noted in *Moore*, this inquiry is one that "involv[es] several considerations." *Id*. *Moore*, however, failed to delineate what those considerations were.

The Tax Court below looked to seven factors laid out by the Ninth Circuit in *Welch v. Commissioner*, 204 F.3d 1228 (9th Cir. 2000):

> (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the

No. 11-60845

loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.

*Id.* at 1230 (citing  *Crowley v. Comm'r*, 962 F.2d 1077, 1079 (1st Cir. 1992); *Frierdich v. Comm'r*, 925 F.2d 180, 182 (7th Cir. 1991); *Piedmont Minerals Co. v. United States*, 429 F.2d 560, 563 (4th Cir. 1970)).  The *Welsh* Court noted that these factors were "non-exhaustive" and merely provided a " general basis upon which courts may analyze a transaction." *Welch*, 204 at 1230.  The Tax Court found that:

1. Although there was a promissory note executed, the process through which it was executed did not conform with UEBF's policies and "fail[ed] to correspond with the substance of the transaction." It therefore afforded the existence of the note "little weight."
2. Although UEBF charged 1% interest, the significantly-below-market-rate interest demonstrated that the transaction was not intended as a loan.
3. Although a payment schedule was established, Frederick's non-payment and UEBF's non-enforcement demonstrated that the transaction was not intended as a loan.
4. The "dual repayment mechanism" could serve as collateral and therefore the fourth factor cut in favor of the Todds.
5. The "dual repayment mechanism" was too contingent upon future events to evince an unconditional obligation to repay, citing *Midkiff v. Commissioner*, 96 T.C. 724, 734–35 (1991), and therefore lack of any repayment by Frederick was controlling to demonstrate that the transaction was not intended as a loan.
6. Frederick had the means to repay the loan and therefore this factor cut in favor of the Todds.
7. Overall, the parties did not conduct themselves in manner evincing an intention to establish a debtor-creditor relationship.

The Todds contend that the Tax Court clearly erred because they formally satisfied the first three categories, which were three of the central pieces of evidence that the Tax Court used to conclude that the $400,000 was not a loan. While we recognize that Frederick and UEBF executed a note and payment schedule, the fact that the note and schedule were only adopted after the fact,

No. 11-60845

in contravention of UEBF policies, suggests the possibility that doing so was merely "a formalized attempt to achieve the desired tax result while lacking in necessary substance, . . . merely parad[ing] under the false colors" of a bona fide loan. *Tomilinson v. 1661 Corp.*, 377 F.2d 291, 295 (5th Cir. 1967). When the *post hoc* note execution is coupled with the fact that Frederick never repaid any of the so-called loan despite his clear means to do so, we cannot say that the Tax Court clearly erred in concluding that the $400,000 payment was not a bona fide loan and therefore should have been included in the Todds' 2002 income.[1]

## B.    Reasonable Cause Defense

Where there is an underpayment that results from negligence or disregard of the rules or that was substantial, the Internal Revenue Code imposes a penalty equal to 20% of the underpayment. 26 U.S.C. § 6662(a)–(b). However, the penalty shall not be imposed "if it is shown that there was a reasonable cause for [any portion of an underpayment]  and that the taxpayer acted in good faith with respect to such portion." *Id*. at § 6664(c)(1). The Todds argue that the penalty should not apply because they had a certified public accountant prepare their 2002 return. Our precedent mandates that the taxpayers show that they "[r]eli[ed] on the advice of a professional tax adviser" and additionally that such reliance was valid due to "the quality and objectivity of the professional advice which they obtained." *Bemont Invs., L.L.C. ex. rel. Tax Matters Partner v.*

---

[1] The Todds also contend that the stipulations of fact entered into by the parties establish that the $400,000 payment was a loan. The parties stipulated: "Dr. Todd's unpaid principal balance on the note was $400,000 on December 31, 2002" and "As of December 31, 2003, Todd owed a principal balance of $400,000 to UEBF." From these stipulations, the Todds posit that by acknowledging that $400,000 was "owed," the Commissioner was acknowledging genuine indebtedness. Our inquiry under *Moore* is whether it is "the intention of the parties that the money advanced be repaid." 412 F.2d at 978. Neither of these stipulations resolves this question. *See also Saviano v. Comm'r*, 765 F.2d 643, 645 (7th Cir. 1985) (Commissioner's stipulation that taxpayer executed a "Loan Agreement" did not bind court as to appropriate characterization of the transaction for tax purposes); *cf. Estate of Maceo*, 23 T.C.M. (CCH) 258, 356 (1964) ("[A] stipulation presupposes a meeting of the minds covering the facts which are the subject of consideration.")

6

No. 11-60845

*United States*, 679 F.3d 339, 349 (5th Cir. 2012) (internal quotation marks omitted). The Todds have put forth no evidence, other than the fact that a C.P.A. prepared their taxes, that they validly relied on the C.P.A.'s advice. *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 548 (5th Cir. 2009) (The taxpayer bears the burden of proof on a "reasonable cause" defense.); *see also Neonatology Assocs. P.A. v. Comm'r*, 115 T.C. 43, 100 (2000) ("The mere fact that a certified public accountant has prepared a tax return does not mean that he or she has opined on any or all of the items reported therein."), *aff'd*, 299 F.3d 221 (3d Cir. 2002). Therefore, we find no clear error in the Tax Court's imposition of the § 6662 penalty.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the Tax Court.