T.C. Memo. 2013-13

UNITED STATES TAX COURT

JOHN MICHAEL GASSAWAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17745-10.                           Filed January 15, 2013.

John Michael Gassaway, pro se.

<u>Jeffrey D. Heiderscheit</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a $138,480 deficiency and a

$27,696 section 6662(a) penalty with respect to petitioner's Federal income tax for

2006.  The issues for decision are whether approximately $400,000 received from

a client was a loan or taxable income and whether petitioner is liable for the

[*2] penalty.  Unless otherwise indicated, all section references are to the Internal Revenue Code for the year in issue.

## FINDINGS OF FACT

Petitioner resided in Texas when he filed his petition.  During 2006, he was practicing law in Oklahoma through an S corporation, Michael Gassaway, PLLC.

Beginning in 2005, petitioner acted as criminal defense attorney for Mariano Falcon Sanchez.  On February 25, 2005, Sanchez was charged by the State of Oklahoma with felony drug trafficking, a mandatory incarceration crime.  Sanchez posted bail on March 2, 2005.  Sanchez subsequently failed to appear in court.  His bail was forfeited on March 29, 2005, and a bench warrant was issued March 31, 2005.  Petitioner filed a cash transaction report in May 2005 reporting $170,000 in cash received from Sanchez for business services.   Petitioner last spoke to Sanchez in November 2006, at which time Sanchez was a fugitive from justice.  (The period of petitioner's actual representation of Sanchez is not clear from the record, but the parties stipulated that it continued through 2008.)

On November 7, 2006, petitioner deposited into his Michael Gassaway, PLLC, bank account a deposit of $392,355 in cash.  That deposit represented funds Sanchez delivered to petitioner.  Michael Gassaway, PLLC, did not record the November 7, 2006 deposit in its books.

[*3]   On November 17, 2006, petitioner wired $400,991.91 from the Michael Gassaway, PLLC, bank account to Land America Commonwealth Title of Austin as partial payment for a house located on Chateau Avenue in Austin, Texas (Chateau Avenue house).  Petitioner paid a total of $1,057,350 for the Chateau Avenue house. The balance of the purchase price for the house was paid with a $795,000 mortgage loan petitioner borrowed from Wells Fargo Home Mortgage.

Petitioner applied for the mortgage loan on the Chateau Avenue house at an interest rate of 6.625%.  On the loan application, he represented that no part of the downpayment was borrowed and that he intended to occupy the house as his primary residence.  After the purchase was completed, petitioner rented the house back to the seller.  In 2008, petitioner and his wife moved into it; they continued to occupy it as their residence through the time of trial of this case in March 2012.   On May 5, 2010, petitioner transferred the Chateau Avenue house to his wife Debra via quitclaim deed and an interfamily transfer and dissolution.

No security or collateral for the funds received from Sanchez was provided to Sanchez.  None of the documents reflecting sale of the house reflected any participation by Sanchez.  A document entitled "Promissory Note" that was dated October 6, 2006, and signed by petitioner over the handwritten date "11/6/06" recited:  "For value received, I, John M. Gassaway, of Oklahoma City, OK,

**[*4]** promise to pay to Mariano Falcon Sanchez at Oklahoma City, OK, the sum of $400,000 with interest at the rate of 4% annually. Said sums are due five years from the making, to wit, October 5, 2011, but may be paid earlier with no penalty." A purported agreement by which Sanchez would loan funds for purchase of the Chateau Avenue house was not executed by Sanchez or even seen by Sanchez before the purported loan because it was not prepared until after Sanchez delivered the cash to petitioner. Petitioner has no other documentation reflecting a loan by Sanchez to petitioner.

On his Federal income tax return for 2006, petitioner reported $225,183 as S corporation income from Michael Gassaway, PLLC, and $176,000 as wages from the S corporation. He did not report the funds received from Sanchez in November 2006 on the return. He reported total tax of $100,622.

On February 17, 2011, petitioner mailed a letter and a check for $432,000 to Sanchez at an address in Chicago, Illinois. The account on which the check was written did not have sufficient funds to pay the check. The envelope in which the check was sent was returned by the U.S. Postal Service marked "Attempted - Not Known, Unable to Forward".

Petitioner was disbarred in Oklahoma on June 17, 2008, and is no longer eligible to practice law. That action by the Oklahoma Bar followed years of

**[\*5]** disciplinary actions against petitioner beginning in 1987 and involving various acts of dishonesty. In 1995 petitioner was convicted of making a false statement on a Federal income tax return. He resigned from the Oklahoma Bar but was reinstated in June 2002. In 2004, the Oklahoma Bar Association filed a complaint alleging three counts of attorney misconduct. The complaint was amended on January 18, 2007, to add 12 more counts of misconduct. Disciplinary proceedings against petitioner were thus pending at the time of the transfer of funds in issue here.

OPINION

Petitioner testified and contends that the funds he received from Sanchez in November 2006 represented a loan to be invested in residential property in Austin, Texas. He relies on the unsigned loan agreement while admitting that Sanchez never even saw the agreement. He claims that the loan was at a going rate of interest, but the only evidence in the record of interest rates for 2006 is petitioner's application for a mortgage loan secured by the purchased property at a 6.625% rate. He claims that the property was purchased at less than its appraised value and had a paying tenant, arguing an investment purpose for the property. However, he also testified that he visited Austin because his daughter was a student at the University of Texas, he represented on the loan application that he

**[*6]** intended to occupy the property as his primary residence, and he and his wife moved into the property in 2008 and continued to occupy it through the time of trial.

Petitioner claims that Sanchez was to be repaid through the proceeds of sale of the Chateau Avenue house, but the house was listed for sale only during a brief period in 2010. As of the time the purported note was due, the house had been transferred to petitioner's wife. He claims that he tried to repay the loan months before it was due by a check on an account with insufficient funds sent to a long outdated address for Sanchez. Although petitioner contends that he had adequate funds available in another account, he wrote the check on the account with insufficient funds "as a precautionary measure * * * in case someone that was at the house tried to cash the check that wasn't Mr. Sanchez, it wouldn't clear and I would be able to verify it that way".

Respondent contests the credibility of petitioner's explanation, pointing out the total absence of corroboration and the improbability of Sanchez's loaning the money for an unsecured investment and then disappearing, never to be heard from again, and making no attempt to collect on the supposed loan. In addition, respondent asserts, the promissory note presented by petitioner is for $400,000 and dated October 2006, while petitioner received only $392,550 in November 2006.

**[\*7]** Respondent disputes the reasonableness of the 4% interest rate specified in the note and points out inconsistencies between the terms regarding repayment.

Petitioner objected in the stipulation to paragraphs and exhibits dealing with his conviction and disbarment. The Court reserved ruling on the objections. In his brief, respondent cites rule 609(b) of the Federal Rules of Evidence and argues that petitioner's past actions are probative to the reliability of his testimony. Petitioner did not address the rule in his answering brief.

Rule 609 allows admission of certain convictions for impeachment purposes. If more than 10 years have passed since the conviction or release from confinement for it, whichever is later, evidence of the conviction is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use. Fed. R. Evid. 609(b).

Although we reserved ruling at trial and expressed the view that the relevance of petitioner's criminal conviction and disbarment was marginal, on review of the record and consideration of the other evidence, we cannot ignore it. The limitations of rule 609 do not apply if a conviction is admitted for a purpose

**[\*8]** other than to impeach.  See, e.g., <u>United States v. Lopez</u>, 979 F.2d 1024, 1034

(5th Cir. 1992), where the Court of Appeals stated:

> Extrinsic evidence, which includes prior convictions, is admissible under the general standards of Rules 402 and 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice.  <u>United States v. Carter</u>, 953 F.2d 1449, 1458 (5th Cir. 1992), cert. denied sub nom.  <u>Hammack v. United States</u>, 504 U.S. 990, 112 S.Ct. 2980, 119 L.Ed.2d 598.  Relevant extrinsic evidence is admissible to contradict and possibly disprove a witness's testimony about a material issue of the case. \* \* \* [<u>United States v. Opager</u>, 589 F.2d 799, 803 (5th Cir. 1979). ]  Extrinsic evidence is material, not collateral, if it contradicts "any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true."  <u>Carter</u>, 953 F.2d at 1458 n. 3 (quoting McCormick on Evidence § 47, at 112 (E. Cleary ed., 3d ed. 1984)).  Finally, Rule 403 does not provide for a time limit like Rule 609 does.

> \*        \*        \*        \*        \*        \*

> Rule 403 requires the court to weigh the probative value and the prejudicial effect.  This circuit has consistently applied the two-part test established in <u>United States v. Beechum</u>, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) and in <u>United States v. Robinson</u>, 700 F.2d 205, 213 (5th Cir.), <u>aff'd</u> after remand, 713 F.2d 110 (5th Cir. 1983), cert. denied, 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984).   Under <u>Beechum</u>, the court must first determine whether the conviction is relevant.  Second, the court must decide that the probative value is not substantially outweighed by its prejudicial effect, as set forth in Rule 403.  <u>United States v. Zabaneh</u>, 837 F.2d 1249, 1262-64 (5th Cir. 1988). \* \* \*

**[\*9]**  We conclude that the standards for admissibility of petitioner's history have been met here.  Petitioner's situation in 2006 is probative of whether his receipt of funds was income or a bona fide loan when he received the funds in question in 2006.  He was facing long-pending disciplinary proceedings, had previously been suspended by the Oklahoma Bar, and had years earlier resigned following a criminal conviction for making a false statement on a Federal tax return.  He must have known that suspension or disbarment was likely, and he intended to relocate to Texas.  These circumstances, and his representations on the loan application, contradict his claim that the Chateau Avenue house was purchased as a joint investment with Sanchez and thus are relevant.  On the other hand, the danger of unfair prejudice in a trial without a jury is minimal if considered at all.  See Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981).

Respondent argues that factors usually indicating that an advance is a bona fide loan are not present here, specifically a payment schedule, security or collateral to assure repayment, a written loan agreement, records reflecting the loan transaction, and repayments. "Whether a certain transaction constitutes a loan for income tax purposes is a factual question involving several considerations, but a distinguishing characteristic of a loan is the intention of the parties that the money advanced be repaid." Moore v. United States, 412 F.2d 974, 979 (5th Cir.

[*10] 1969); see Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; Delta Plastics Corp. v. Commissioner, 54 T.C. 1287, 1291 (1970); Kaider v. Commissioner, T.C. Memo. 2011-174, slip op. at 15-16; Todd v. Commissioner, T.C. Memo. 2011-123, aff'd, ___ Fed. Appx. ___, 110 A.F.T.R.2d (RIA) 2012-5606, 2012-2 USTC para. 50,525 (5th Cir. Aug. 16, 2012); Hunt v. Commissioner, T.C. Memo. 1989-335. Once there is evidence that the funds were received by petitioner, he has the burden of proving that they are not taxable. Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986); see DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The burden shifts under section 7491(a) only if he presents credible evidence. He has not done so.

The claim that the funds received from Sanchez were a loan depends entirely on petitioner's testimony. Even if the full amount was not for services to Sanchez, the absence of a bona fide intent to repay the advance would lead to the conclusion that it was petitioner's income at the time he received it. See Moore v. Commissioner, 412 F.2d 974. Sanchez was a fugitive at the time of the transaction. We agree with respondent that the scenario petitioner presented is implausible and is contradicted by petitioner's own contemporaneous representations on the mortgage loan application. The promissory note and

**[\*11]** unsigned loan document petitioner presented are suspect and, in any event, incomplete. We need not accept petitioner's testimony and may and do reject it because of the many indicia of unreliability. See Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), aff'g T.C. Memo. 1967-85; Tokarski v. Commissioner, 87 T.C. at 77. We do not know what Sanchez intended, but we are not persuaded that petitioner had a bona fide intent to repay the purported loan.

Respondent has the burden of producing evidence that the section 6662(a) penalty applies. See sec. 7491(c). Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. A substantial understatement of income tax exists if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

We have found that petitioner should have included the funds received from Sanchez as income on his 2006 tax return. The consequent understatement is substantial within the meaning of the statute. The evidence supporting that conclusion satisfies respondent's burden of showing that the section 6662 penalty is appropriate, and petitioner must show that the penalty should not be imposed. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

**[\*12]** Petitioner argues only that the funds received were a loan, not income. He has not otherwise addressed the penalty and has not argued reasonable cause or good faith negating the penalty. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. We conclude that the section 6662 penalty should be sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.