# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2016

Lyle W. Cayce
Clerk

No. 15-60527

MONEYGRAM INTERNATIONAL, INCORPORATED AND
SUBSIDIARIES,

Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent–Appellee.

Appeals from the Decision of the
United States Tax Court
TC No. 12231-12
TC No. 30309-12

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Ordinarily, a corporation may only deduct its capital losses from its capital gains. The Tax Code, however, provides an exception for banks, which are permitted to deduct capital losses against ordinary income. On its 2007 and 2008 tax returns, Petitioner–Appellant MoneyGram International, Inc. and its

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

subsidiaries (collectively, "MoneyGram") deducted its capital losses against its ordinary income under this exception. Respondent–Appellee Commissioner of Internal Revenue ("Commissioner" or "IRS") disagreed as to whether MoneyGram was a "bank" and issued deficiency notices for the relevant tax years. MoneyGram petitioned the United States Tax Court for a redetermination of its tax liabilities, and at summary judgment, the Tax Court held that MoneyGram was not a "bank" as defined by 26 U.S.C. § 581 and thus could not offset its capital losses against ordinary income under 26 U.S.C. § 582. Because we hold that the Tax Court applied incorrect definitions of "deposits" and "loans" in analyzing whether MoneyGram was a bank under § 581, we vacate its order and remand for reconsideration consistent with this opinion.

## I.    BACKGROUND

The material issue on appeal is whether MoneyGram is a "bank" as defined by 26 U.S.C. § 581. This provision defines "bank" in relevant part as follows:

> For purposes of sections 582 and 584, the term "bank" means a bank or trust company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia) or of any State, a substantial part of the business of which consists of receiving deposits and making loans and discounts, . . . and which is subject by law to supervision and examination by State, Territorial, or Federal authority having supervision over banking institutions.

*Id.*

At summary judgment, the Tax Court held that MoneyGram did not meet this definition for several reasons. First, the Tax Court stated that § 581 requires an entity to be a "bank" within the common meaning of that term. The Tax Court then held that MoneyGram did not meet the common meaning of this term, which it defined to include "(1) the receipt of deposits from the

2

general public, repayable to the depositors on demand or at a fixed time, (2) the use of deposit funds for secured loans, and (3) the relationship of debtor and creditor between the bank and the depositor."

The Tax Court also held that MoneyGram did not satisfy § 581 because "receiving deposits and making loans do not constitute any meaningful part of MoneyGram's business, much less 'a substantial part.'" Because § 581 does not define "deposits" or "loans" the Tax Court drew its own definitions. As for "deposits," the Tax Court held that in the context of § 581, this term means "funds that customers place in a bank for the purpose of safekeeping," that are "repayable to the depositor on demand or at a fixed time," and which are held "for extended periods of time." The Tax Court held that money received by MoneyGram as part of its money order and financial services segments did not meet this definition because MoneyGram does not hold these funds for safekeeping or for an extended period of time.

With regard to "loans," the Tax Court held that this term means an agreement, "memorialized by a loan instrument" that "is repayable with interest," and that "generally has a fixed (and often lengthy) repayment period." The Tax Court held that the Master Trust Agreements entered into between MoneyGram and its agents do not meet this definition and are therefore not loans. Specifically, the Tax Court focused on the fact that the instrument used to memorialize this agreement is facially a trust agreement and not a loan agreement, and does not charge interest.

## II.    STANDARD OF REVIEW

We review the decision of the Tax Court "in the same manner . . . as decisions of the district courts." *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) (quoting 26 U.S.C § 7482(a)). "We therefore examine this decision [de novo] as we do other summary judgment decisions." *Deaton v. C.I.R.*, 440 F.3d 223, 226 (5th Cir. 2006) (quoting *San Antonio Sav. Ass'n v.*

No. 15-60527

*C.I.R.,* 887 F.2d 577, 581 (5th Cir. 1989)). Questions of statutory interpretation are issues of law and are reviewed without deference to the Tax Court. *Howard Hughes Co., v. C.I.R.*, 805 F.3d 175, 180 (5th Cir. 2015).

## III.    DISCUSSION

### A.    Bank or Trust Company

Section 581 begins: "For purposes of sections 582 and 584, the term 'bank' means a bank or trust company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia) or of any State . . . ." 26 U.S.C. § 581. The Tax Court held that this imposes the requirement that an entity seeking classification as a "bank" must "be incorporated and must be a bank or trust company within the common understanding of those terms." Quoting the Fourth Circuit in *Staunton Industrial Loan Corp. v. Commissioner*, 120 F.2d 930 (4th Cir. 1941), the Tax Court next held that the common meaning of "bank" includes the "bare requisites" of "(1) the receipt of deposits from the general public, repayable to the depositors on demand or at a fixed time, (2) the use of deposit funds for secured loans, and (3) the relationship of debtor and creditor between the bank and the depositor."

MoneyGram challenges both the Tax Court's interpretation of § 581 as imposing the requirement that an entity be a bank within the common meaning of that term and its articulation of that common meaning. Specifically, MoneyGram argues that the Tax Court's interpretation impermissibly imposes an "ill-defined extra-statutory requirement that is inconsistent with the language and purpose of Section 581." Rather, MoneyGram argues that the beginning of § 581 only requires that the entity be "incorporated and operating legally."

To be sure, § 581 is not a model of statutory clarity. Its construction and circular use of the term "bank" are inherently ambiguous. Having carefully

4

considered this question, however, we concluded that the most consistent and harmonious reading of this section supports the Tax Court's conclusion that being a "bank" within the commonly understood meaning of that term is an independent requirement.

Both parties argue that the canon of interpretation against surplusage supports its position. The canon disfavoring surplusage is "one of the most basic interpretive canons." *Corley v. United States*, 556 U.S. 303, 314 (2009). Pursuant to this principle, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* at 315 (alteration in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Accordingly, "[i]n construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

MoneyGram contends that the Tax Court's interpretation renders § 581's requirement that a substantial part of the taxpayer's business consist of "receiving deposits and making loans and discounts" superfluous because the Tax Court's definition of the common meaning of bank also includes the receipt of deposits and the making of loans. Conversely, the IRS argues that MoneyGram's interpretation reads "bank or trust company" out of § 581.

MoneyGram's reading of § 581, in which the opening sentence only requires that an entity be "incorporated and operating legally," violates the canon against surplusage. In essence, MoneyGram reads the first portion of § 581 as follows: "For purposes of sections 582 and 584, the term 'bank' means a . . . company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia) or of any State." Such an interpretation must be disfavored.

We also find MoneyGram's argument that incorporating the common meaning of bank into the statute would render other portions of § 581

superfluous unavailing. While it is true that the common meaning of bank adopted by the Tax Court is similar to § 581's requirement that "a substantial part of the [taxpayer's] business . . . consists of receiving deposits and making loans and discounts," these components are not completely duplicative. For instance, an entity could be a bank within the common meaning of the term but still fail to satisfy § 581's requirement that receiving deposits and making loans amount to "a substantial part of [its] business." In fact, nearly this exact situation arose in *Magruder v. Safe Deposit & Trust Co. of Baltimore*, 121 F.2d 981 (4th Cir. 1941). There, the Fourth Circuit considered whether the taxpayer was a "bank" under § 177(d) of the Revenue Act of 1934. *Id.* at 982. While § 177(d) limited the amount of capital losses that could be claimed, this limitation did not apply to taxpayers that were "a bank or trust company incorporated under the laws of the United States or of any State or Territory, a substantial part of whose business is the receipt of deposits." *Id.* (quoting 26 U.S.C. § 177(d)). The court treated each of these components as separate elements, noting that while it "entertain[ed] no doubt that the taxpayer is a 'trust company incorporated under the laws' of Maryland . . . we do not think it can qualify under the second and equally essential clause of the exempting statute: 'a substantial part of whose business is the receipt of deposits.'" *Id.* (quoting 26 U.S.C. § 177(d)).

Put another way, the Tax Court's interpretation that "bank" must be given its common meaning, which is in essence the receipt of deposits and making of loans, is not purely duplicative of § 581's requirement that "a substantial part of the [taxpayer's] business . . . consists of receiving deposits and making loans and discounts" because this later requirement adds an important modifier: "substantial part of the business." Section 581 thus qualifies these factors, requiring that a taxpayer seeking to take advantage of this tax benefit not only engage in the touchstone activities of a bank, but that

these activities amount to a substantial part of its business. As such, the Tax Court's interpretation of § 581 gives each clause independent meaning and effect.

MoneyGram's interpretation is also at odds with the way courts typically address circular definitions. A circular definition is one in which "the term being defined is used within its own definition." *Brewington v. State Farm Mut. Auto. Ins. Co.*, 45 F. Supp. 3d 1215, 1219 (D. Nev. 2014). When confronted with such definitions, courts do not simply read out the seemingly redundant text as MoneyGram asks us to do here. Instead, courts have consistently sought to give that statutory text meaning. *See, e.g.*, *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013).

For instance, in *Fathauer v. United States*, 566 F.3d 1352 (Fed. Cir. 2009), the Federal Circuit rejected the notion that a circularly defined term is inherently meaningless. *See id.* at 1355. In that case, the question was whether part-time government workers were entitled to additional pay for working Sundays under 5 U.S.C. § 5546. *Id.* at 1353. Relevant to that case, the statute defined "employee" as "an employee in or under an Executive agency." *Id.* at 1355 (quoting 5 U.S.C. § 5541(2)(A)). While the court noted that this definition was "'circular' in the sense that it uses the defined word in the definition," it rejected the notion that this rendered the term meaningless. *Id.* Rather, the court held that "Congress's decision to use the word 'employee' in the definition demonstrates that a special definition was unnecessary because the word was intended to be given its ordinary meaning." *Id.*

Similar to the case at hand, in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank*, 832 F.2d 1005 (7th Cir. 1987), the Seventh Circuit considered an Illinois statute that circularly defined "bank" as "any person doing a banking business whether subject to the laws of this or any other jurisdiction." *Id.* (quoting Ill. Rev. Stat. ch. 17 ¶ 302 (1986)). Rather than

simply excise "banking business" from the statute, the Seventh Circuit noted that "[p]erhaps the statute uses a circular definition because the elements of banking are not particularly obscure." *Id.* It then gave these words their common meaning by looking to how other statutes, cases, and dictionaries defined them. *Id.* at 1006–07.

For these reasons, we agree with the Tax Court's interpretation that "bank" as used in § 581 imposes an independent element and should be given its common meaning.

Relying on *Staunton*, the Tax Court held that the common understanding of "bank" includes the following "bare requisites": "(1) the receipt of deposits from the general public, repayable to the depositors on demand or at a fixed time, (2) the use of deposit funds for secured loans, and (3) the relationship of debtor and creditor between the bank and the depositor." We agree with this definition as its components are consistent with the relevant case law and dictionaries.

For instance, in *Magruder*, the Fourth Circuit noted that "the taxpayer . . . was not the type of institution which Congress intended to include within the exemption as to capital losses" because it "did not receive deposits from the general public." 121 F.2d at 981. As the court noted, the taxpayer, which received funds almost exclusively from either one of its own departments or a select few "favored corporations" was "not the ordinary commercial deposits which banks receive" and "confirm[ed] . . . that the taxpayer was quite without the class intended to be exempted by Congress." *Id.* Moreover, we agree with the Tax Court's reasoning in *Austin State Bank v. C.I.R.*, 57 T.C. 180 (1971), which explained that the requirement that deposits be made from the "general public" is meant "merely to differentiate between deposits received from sources in some way connected with the bank and those received from ordinary and unrelated customers of banking services." *Id.* at 187.

The relevant authorities also illustrate that *Staunton*'s common meaning of bank correctly includes "secured loans." For instance, Bouvier's Law Dictionary includes in its definition of bank in the commercial context the "making loans of money on collateral security." Bouvier's Law Dictionary 318 (18th ed. 1984). Finally, it is well established that the relationship between a bank and its depositors is similar to that of debtor and creditor. *See, e.g., Tex. Mortg. Servs. Corp. v. Guadalupe Sav. & Loan Ass'n (In re Tex. Mortg. Servs. Corp.)*, 761 F.2d 1068, 1075 (5th Cir. 1985) ("Normally, funds deposited with a bank are general deposits which create a debtor-creditor relationship between the bank and its depositor."); 5A Michie on Banks and Banking ch. IX § 1 at 1 (Paul Ernest, ed., 2014) (same).

While we agree with the Tax Court in this regard, we disagree with the manner in which it defined "deposits" and "loans" as relevant both the to this inquiry and § 581's later requirement that a substantial part of the taxpayer's business consist of receiving deposits and making loans. The appropriate definitions for these terms are addressed below.

## B. Deposits

The Tax Court held that "deposits" means "funds that customers place in a bank for the purpose of safekeeping" that are "repayable to the depositor on demand or at a fixed time" and which are held "for extended periods of time." We agree with all but the last aspect of this definition.

As the Tax Court correctly observed, because § 581 refers to deposits in the banking context, for the purposes of this statute, "deposits" should have a narrower definition than its broadest possible meaning. *See C.I.R. v. Valley Morris Plan*, 305 F.2d 610, 616 (9th Cir. 1962) ("[T]erm 'deposit' always has had a meaning of its own, 'peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding.'" (quoting *Elliott v. Capital City State Bank*, 103 N.W. 777, 778

No. 15-60527

(Iowa 1905))). The relevant authorities demonstrate that the essential elements of a "deposit" include the following. First, a deposit must involve the placement of funds with another for "safekeeping." *See, e.g.*, *Engel v. O'Malley*, 219 U.S. 128, 136 (1911) ("The receipt of money by a bank . . . is in a popular sense the receipt of money for safekeeping."); *Jackson Fin. & Thrift Co. v. C.I.R.*, 260 F.2d 578, 582 (10th Cir. 1958) ("Depositors place their money in banks primarily for safekeeping."). Second, those funds must be subject to the control of the depositor such that they are repayable on demand or at a fixed time. *See Staunton*, 120 F.2d at 933–34 (holding that one of the "chief functions" of a bank is "the receipt of deposits from the general public, repayable to the depositors on demand or at a fixed time"); 5A Michie on Banks and Banking ch. IX § 3 at 41–42 (Paul Ernest, ed., 2014) ("[T]he term 'deposit' signifies the act of placing money in the 'custody' of a bank, to be withdrawn at the will of the depositor.").

We disagree, however, that the definition of "deposit" includes the requirement that funds be placed for an extended period of time. In support of imposing this requirement, the Tax Court quotes the following portion of *AmSouth Bancorporation & Subsidiaries v. United States*, 681 F. Supp. 698 (N.D. Ala. 1988):

> In the commercial banking industry, deposit relationships represent the most favorable source of funds and are one of the most important factors with respect to the profitability of a commercial bank. Deposit relationships tend to be the focal point for other bank customer relationships. Since the ability of a bank to attract and retain core deposits is the main factor in the size and scope of its business, most banking services are designed to keep and develop those deposit relationships. Once a deposit relationship is established, it generally will be retained, all things being equal, for a period of time with little, if any, need for the bank to engage in further *direct* marketing efforts.

*Id.* at 705. In our view, this does not support the Tax Court's holding. First, this section of the opinion in *AmSouth* does not address whether an entity receives deposits, but rather concerns how to value that entity's deposit relationships. *See id.* Second, this language does not expressly state that duration is an essential element of a deposit. Rather, it notes only that the relationship between depositor and depository "generally will be retained, all things being equal, for a period of time." *Id.* It says nothing of the duration of the actual deposit itself.

Accordingly, we hold that the Tax Court erred by interpreting "deposit" to include the requirement that MoneyGram "hold its customers' funds for extended periods of time."

## C.   Loans and Discounts

The Tax Court defined "loan" as a memorialized instrument that is repayable with interest, and that "generally has a fixed (and often lengthy) repayment period." We disagree with this definition.

Courts that have considered the meaning of "loans" as used in § 581 and its predecessor, 26 U.S.C. § 104, have defined this term as "an agreement, either expressed or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree." *Welch v. C.I.R.*, 204 F.3d 1228, 1230 (9th Cir. 2000) (quoting *Valley Morris Plan*, 305 F.2d at 618). In another context, this Court has similarly stated that a "loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows." *Calcasieu-Marine Nat. Bank of Lake Charles v. Am. Emp. Ins. Co.*, 533 F.2d 290, 296 (5th Cir. 1976). Notably, courts have repeatedly stated that interest is not required. *See, e.g., Welch*, 204 F.3d at 1230.

As these cases demonstrate, "[t]he central inquiry for determining if a transaction is a bona fide loan for tax purposes is whether it is 'the intention of the parties that the money advanced be repaid.'" *Todd v. C.I.R.*, 486 F. App'x 423, 426 (5th Cir. 2012) (per curiam) (quoting *Moore v. United States*, 412 F.2d 974, 978 (5th Cir. 1969)). This is a factual question. *See Moore*, 412 F.2d at 978. This Court has endorsed a non-exhaustive seven-factor test to determine whether the parties to a transaction intended it to be a loan. *Todd*, 486 F. App'x at 426. Under this test, courts look to:

> (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.

*Id.* (quoting *Welch*, 204 F.3d at 1230).

Accordingly, the Tax Court erred by failing to apply the appropriate definition of "loan."

Additionally, we note that § 581 provides that a substantial part of the taxpayers business must consist of "making loans *and discounts*." 26 U.S.C. § 581 (emphasis added). The statute's use of the conjunctive "and" rather than the disjunctive "or" in this phrase indicates that "discounts" is a required element. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 116–17 (2012) (observing that the conjunctive use of the word "and" indicates that each aspect must be satisfied). The Tax Court did not address whether MoneyGram makes "discounts," and neither party has presented argument regarding this requirement on appeal. On remand, the Tax Court is directed to consider whether MoneyGram satisfies this component of § 581.

No. 15-60527

## IV.　CONCLUSION

For the foregoing reasons, we VACATE the order of the Tax Court and REMAND for reconsideration consistent with this opinion.

No. 15-60527

WIENER, Circuit Judge, dissenting:

To qualify as a bank under § 581, MoneyGram must show that it is "a bank or trust company incorporated and doing business under the laws of the United States . . . or of any State, a substantial part of the business of which consists of receiving deposits and making loans and discounts . . . ." The majority concludes that the Tax Court applied incorrect definitions of "deposits" and "loans" in analyzing whether MoneyGram was a bank under § 581. But, MoneyGram has wholly failed to adduce any probative evidence to sustain its burden of proof on summary judgment under any iteration of the definition of a bank.

We review the Tax Court's summary judgment decision de novo. Thus, even if we assume *arguendo* that the Tax Court made legal errors in defining "deposits" and "loans," there is no reason that we cannot apply the correct standards to the facts. And, if we do so, we must hold that MoneyGram is not a bank under § 581.

The Tax Court's treatment of "deposits" as "funds . . . placed for an *extended* period of time" creates no reversible error. Even accepting that a "deposit" need only be (1) made for purposes of safekeeping, and (2) repayable on demand or at a fixed time, MoneyGram's evidence falls woefully short of satisfying its burden of proof. This is so, regardless of what the Tax Court said about deposits being for "an extended period of time," because MoneyGram has not proved − and cannot prove − that the "deposits" at issue are made for purposes of safekeeping. MoneyGram's customers *purchase a product*, viz, a money order; they do not "deposit" funds. MoneyGram's financial institution clients plainly do not "deposit" funds for safekeeping.

Nitpicking some of the definitions of a loan in light of selected portions of other opinions cannot excuse MoneyGram's failure, as the taxpayer, to bear

14

its burden to prove that it does qualify as a bank on this element. The record demonstrates that MoneyGram simply does not make loans in the well-established context of "bank" loans. As the Tax Court held, MoneyGram's purported "loans" are facially trust agreements. This precludes a finding that MoneyGram makes loans, regardless of the Tax Court's consideration of whether MoneyGram charges interest. Further, if MoneyGram does not receive "deposits," there is no way that it can use *deposit funds* for secured loans.

In addition, there can be no "discounts" absent "loans," ergo, the conjunctive phrase, "loans **and** discounts." Since MoneyGram could never prove that it made *loans* in the banking context, there was no need for either party to address *discounts*.

MoneyGram cannot be a bank under § 581 if it fails either the "deposits" test or the "loans" test. MoneyGram has wholly failed to prove that it either receives "deposits" or makes "loans." Even if the issue of whether MoneyGram makes "loans" is a close call, MoneyGram is not a bank under § 581 for the sole reason that it does not receive "deposits." Given MoneyGram's burden to prove both loans *and* deposits under the conjunctive, its failure to prove either one is fatal.

Because I would affirm the Tax Court's determination that MoneyGram is not a bank for the purposes of § 581, I respectfully dissent.