■ The People of the State of New York, Respondent, v Kenneth Hayes, Appellant. [901 NYS2d 154]—

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J.), rendered September 9, 2005, convicting defendant, after a jury trial, of assault in the second degree and criminal possession of a weapon in the fourth degree, and sentencing him to an aggregate term of two years, affirmed.

The People did not violate their disclosure obligations under *Brady v Maryland* (373 US 83 [1963]), and defendant is not entitled to dismissal of the indictment on the ground that exculpatory material was permanently lost or destroyed by the police. Defendant raised a justification defense in connection with his stabbing of another patron at a crowded movie theater. Shortly before trial, the prosecutor informed defense counsel that a police sergeant had just told him about statements the sergeant overheard at the crime scene minutes after the stabbing, in which two apparently unconnected bystanders commented that the victim had the knife first. The sergeant, who was busy securing the hectic crime scene, did not obtain identities or contact information for these persons. Although the information that the victim had the knife first was material to the issue of justification and favorable to the defense, the People did not suppress it; under the circumstances, earlier disclosure would not have enabled defendant to make use of it. Defendant argues that regardless of whether or not he acted in good faith, the sergeant was obligated to "preserve" the exculpatory information by asking, or directing another officer to ask the two bystanders for their pedigrees, and that disclosure of the content of their statements was pointless without providing contact information. There is no question that law enforcement agencies are required to preserve exculpatory evidence already in their

possession. However, although the dissent faults the police for not obtaining the identities or contact information of the bystanders, the law is clear that they are not required to affirmatively acquire or gather additional evidence that might be helpful to the accused (*People v Alvarez*, 70 NY2d 375, 381 [1987]). This case does not involve a duty to memorialize or otherwise preserve information already known (*cf. People v Bayard*, 63 AD3d 481 [2009], *lv granted* 13 NY3d 858 [2009]). Here, the identities of the bystanders and their contact information were never known to law enforcement. Finally, the bystanders were never in the People's control, and merely acquiring their pedigrees would not have placed them in such control (*compare People v Jenkins*, 41 NY2d 307, 310-311 [1977]). The failure of the police to perform a function not required of them should not be used to support the basis for an interest-of-justice argument.

The court properly exercised its discretion in precluding the defense from using the bystanders' statements on cross-examination for the purpose of challenging the thoroughness of the police investigation, specifically by showing that the police should have tested the knife for the victim's fingerprints and interviewed the bystanders.

The dissent contends that the court's failure to specifically instruct the jury that a finding of not guilty of the greater crime based on justification precluded it from considering the lesser included offenses—a "stop consideration" charge—compels reversal of the judgment and dismissal of the indictment. Although acknowledging that this claim is unpreserved by reason of defendant's failure to object to the charge as given (*see People v LaPetina*, 9 NY3d 854 [2007]), the dissent argues that we should, in the interest of justice, exercise our discretion and consider this claim.

While our powers of review "in the interest of justice" are extremely broad (CPL 470.15 [6]), they are not unlimited and should be exercised with care. In this regard, we have long held that in exercising this power, "we must guard against being capricious and whimsical, affirming when we feel like it, and reversing when we feel like it" (*People v Kidd*, 76 AD2d 665, 667 [1980], *lv dismissed* 51 NY2d 882 [1980]; *see also People v Bourne*, 139 AD2d 210, 215 [1988], *lv denied* 72 NY2d 955 [1988]).

The evidence at trial revealed that defendant and six of his friends went to a large multiplex cinema in Times Square. Because the theater was crowded, they sat in the uppermost tier of the theater. For 15 minutes after the movie started, 10

people in the front near the screen were talking and making noise, which "annoyed" defendant and his friends, as well as other patrons in the theater. Defendant claimed that when he went down alone to confront the noisemakers, the victim jumped up and began arguing with him. When the victim reached into his waistband, defendant believed he had a weapon. According to defendant, the victim took a swing at him and he could tell from the reflection on the movie screen that the victim had a knife. Defendant testified that both he and the victim fell to the floor, and in the scuffle, he took the knife away from the victim. Defendant further testified that although he now had the knife, the victim continued to attack him and that he was only trying to protect himself, not to stab the victim. In the melee that followed, defendant ran from the building and was observed by a police officer discarding the knife under a car. As was to be expected in this type of scenario, the victim, as well as other witnesses who testified both for and against defendant, gave varying stories as to what had taken place.

The jury was thus faced with a classic credibility determination, one that is not changed by the absence of any testimony from the two unknown bystanders. Having observed the witnesses who did testify, and hearing the testimony that was subject to cross-examination, the jurors were in the best position to determine which version of the incident was most credible. In fact, on appeal defendant does not challenge the legal sufficiency of the proof that persuaded the jury to convict him of assault in the second degree and criminal possession of a weapon in the fourth degree. Factually, there is no reason to set aside the verdict in the interests of justice.

With respect to the jury instruction, the record is clear that defense counsel did not, in fact, request a "stop consideration" charge. Rather, he asked for and received a charge that justification applies to all three assault counts.

Notably, it was the People who requested the "stop consideration" charge. Defense counsel agreed, stating, "If they find it is justified, it is an acquittal." The court thereafter instructed the jury that the People were required to prove each element of each crime charged, and to disprove justification "with regard to each count that you will consider." Although the court did not give a specific "stop consideration" charge in its instructions to the jury (*see People v Roberts*, 280 AD2d 415 [2001], *lv denied* 96 NY2d 906 [2001]), the charge, when read as a whole, "adequately conveyed the principle that if the jury found that defendant was not guilty of a greater charge on the basis of justification, it was not to consider any lesser counts" (*People v*

*White*, 66 AD3d 585, 586 [2009]). Defense counsel did not object after the charge, and it thus became the law of the case.

In short, the underlying facts and applicable law do not warrant the exercise of our interests-of-justice review, and the conviction should be affirmed. Concur—Andrias, J.P., Saxe and Sweeny, JJ.

Moskowitz and Abdus-Salaam, JJ., dissent in a memorandum by Abdus-Salaam, J., as follows: I respectfully dissent. The charge on justification was erroneous. Under the circumstances, we should, in the interest of justice, exercise our discretion and reverse the conviction for assault in the second degree. The trial court's error "in failing to instruct the jurors that if they found the defendant not guilty of a greater charge on the basis of justification, they were not to consider any lesser counts, is of such nature and degree so as to constitute reversible error" (*People v Feuer*, 11 AD3d 633, 634 [2004]; *see also People v Roberts*, 280 AD2d 415 [2001], *lv denied* 96 NY2d 906 [2001]), and is compelling reason to exercise our discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

I disagree with the majority's assessment that the charge, when read as a whole, adequately conveyed the law on justification to the jury. In *People v White* (66 AD3d 585 [2009]), cited by the majority, where this Court held that "the court's instructions adequately conveyed the principle that if the jury found that defendant was not guilty of a greater charge on the basis of justification, it was not to consider any lesser counts" (at 586), the record showed the court charged that if the jury found the People had failed to prove beyond a reasonable doubt that the defendant was not justified on the top count, then they must find the defendant not guilty on all counts of assault. This is the charge on justification set forth in the Criminal Jury Instructions (CJI2d[NY] Defense, Justification: Use of Deadly Physical Force in Defense of a Person), based upon our decision in *Roberts* (280 AD2d 415 [2001], *supra*), as well as decisions from other Departments.

The charge given in this case did not track the language of the CJI charge, nor did it adequately convey the proper legal principles applicable to the defense of justification. As there is no way of knowing whether the acquittals of first-degree assault and attempted first-degree assault were based on a finding of justification (*People v Roberts*, 280 AD2d 415 [2001], *supra*), the judgment should be reversed. The error committed by the trial court in failing to properly charge the jury regarding the defense of justification is particularly egregious in this case where the defense was greatly hampered because the police did not obtain

the identities of the bystanders who had been heard to say that the victim had the knife first. Defendant had no way of contacting these individuals in order to obtain their testimony at trial. Thus, the majority's observation that the jury was faced with a classic credibility determination and that factually, there is no reason to set aside the verdict in the interest of justice, appears to be made without any consideration that defendant was deprived of an opportunity to contact witnesses that the police confirmed might very well have been helpful in establishing a justification defense.