[13 NYS3d 354]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL VELEZ, Appellant.

First Department, June 30, 2015

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Susan H. Salomon* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Eric C. Washer* and *Peter D. Coddington* of counsel), for respondent.

## OPINION OF THE COURT

Tom, J.P.

A jury found defendant guilty of the lesser charges arising out of the stabbing of his girlfriend's son but acquitted him of the top count of the indictment, attempted murder in the second degree. Since justification was a central issue at trial and the court's instructions did not convey that acquittal of the greater charge of attempted murder based on a finding of justification precluded consideration of the lesser included offenses, the verdict is at best ambiguous. Thus, defendant was deprived of a fair trial, and a reversal is warranted in the interest of justice.

Rodger Meredith, the alleged victim, testified at trial that he was suspicious of the relationship between defendant, who is close to him in age, and Rodger's mother, Milagros Rolon. Both because of the age difference between defendant and Ms. Rolon and because Rodger noticed that defendant always came around near the end of the month when Ms. Rolon received her disability check, Rodger had never felt comfortable around defendant. When defendant did come to their apartment, he and Ms. Rolon would go right to her bedroom and get drunk.

Rodger's 13-year-old brother, Benjamin Jiminez, testified concerning a July 22, 2010 altercation between Rodger and defendant after their middle brother, Damian Meredith, pushed Ms. Rolon, who was drunk, causing her to fall to the floor. Defendant emerged from the bedroom and confronted Damian,

who called Rodger. The following morning, Rodger came to the apartment and argued with defendant in his mother's bedroom. When the two men emerged, they were fistfighting. About a week later, Damian went to live in Florida, and Rodger began staying at his girlfriend's apartment.

As to the assault that took place on the night of November 13, 2010, Rodger testified that he called Benjamin, as had become his practice following the July incident, to ask if his mother had company, by which he meant defendant, and Benjamin told him that "everything is okay, go ahead, come over." Just after entering the apartment building at about 10:40 p.m., as Rodger was putting away his keys, he saw defendant running down the stairs toward him holding a knife. Rodger put up his hand to protect his face but was cut on both his hand and his neck. He tripped, falling onto his right side, and defendant got on top of him, stabbing him in the stomach and left leg. Rodger bit defendant on the hand in an attempt to cause him to drop the knife, and defendant bit Rodger in the head. From the beginning of the assault, Rodger was yelling for his mother, and Benjamin, who heard the commotion from inside the apartment, called the police. When Ms. Rolon came down the stairs, defendant broke off the attack and ran out of the entrance door.

A police officer called by the defense testified that he filled out the initial complaint report in which Rodger stated that defendant pulled out a box cutter following a verbal dispute and stabbed him. The detective who arrested defendant testified that he noticed cuts on defendant's hands, and defendant's brother testified that, on the night of the stabbing, defendant came home with bleeding hands wrapped in a T-shirt. Medical records revealed that while being treated for his wounds at the hospital, defendant stated that he had been assaulted with a knife by an unknown person.

The trial court granted the defense request for a justification charge based, among other things, on defendant's palm-side injuries, which the jury might reasonably consider as defensive wounds. The court explained the justification defense and advised the jurors that they were to determine whether defendant had used, and had been entitled to use, physical or deadly physical force. The court further advised that to the extent they could distinguish among the multiple wounds Rodger allegedly sustained, they were required to "separately analyze the defense of justification with respect to each," and could

conclude that defendant had acted reasonably in inflicting all, some or none of them. The jurors were additionally instructed that "an element of each count" was that defendant acted without justification and if they found that the People "failed to prove beyond a reasonable doubt the defendant was not justified, then you must find the defendant not guilty of the crimes charged." Finally, even if the justification defense were disproved, the jurors were still required to find that the People had established all the other elements of an offense before finding defendant guilty. In setting forth the elements of each of the charged crimes (namely, attempted murder in the second degree, attempted assault in the first degree, and assault in the second degree), the court included, as the last element of each, "[t]hat the defendant was not justified."

In its explanation of the verdict sheet, the court gave the jurors the following instructions:

> "You should consider the counts in the order listed on the verdict sheet, the attempted murder count first, as the verdict sheet indicates you must consider counts one and three. One is attempted murder in the second degree, and count three is assault in the second degree. And you are to consider each of them no matter what your verdict is on each. However, you should consider count two, which is attempted assault in the first degree, only if your verdict on count one, the attempted murder count, is not guilty, and the verdict sheet indicates that."

On the verdict sheet, count one, attempted murder, was accompanied by an instruction that this count must be considered. Count two, attempted assault in the first degree, provided that the jurors were to "[c]onsider this count only if your verdict on count one is Not Guilty." Count three, assault in the second degree, contained the direction that the "[j]ury must consider this count." Neither the verdict sheet nor the court's verbal explanation of its contents mentioned justification.

Defendant's primary contention on appeal is that the court failed to instruct the jury that acquittal on the top count of attempted murder based on justification precluded further deliberations. Presuming that acquittal on the top count was in fact predicated on his justifiable use of deadly force, defendant maintains that the remainder of the verdict convicting him of the two lesser crimes lacks "reliability."

The People respond that defendant failed to advance before the trial court either the claim that acquittal of any offense precludes consideration of any lesser offense or that guilt with respect to each offense charged must be based on his unjustified actions. Thus, his present contentions are unpreserved (citing CPL 470.05 [2]; *People v Hayes*, 72 AD3d 441, 442-444 [1st Dept 2010], *affd* 17 NY3d 46 [2011], *cert denied* 565 US —, 132 S Ct 844 [2011]; *People v Crique*, 63 AD3d 566, 567 [1st Dept 2009], *lv denied* 13 NY3d 835 [2009]). They further argue that the court's charge tracked the CJI pattern jury instructions by including lack of justification as an element of each crime (citing *People v Palmer*, 34 AD3d 701, 703-704 [2d Dept 2006], *lv denied* 8 NY3d 848 [2007]).

On this record, review of the issue in the interest of justice is warranted because it is impossible to discern whether acquittal of the top count of attempted murder in the second degree was based on the jurors' finding of justification so as to mandate acquittal on the two lesser counts. While lack of justification was included as an element of each crime, the verdict sheet and the court's accompanying explanation created confusion, because they indicated among other things that the jurors "must consider" count three irrespective of their disposition of higher counts and they failed to explicitly convey that a finding of justification on the top count precluded further deliberation. While the trial court did follow the CJI justification instruction in its charge, it also included as an element of each offense "[t]hat the defendant was not justified," which may have led the jurors to conclude that deliberation on each crime required reconsideration of the justification defense, even if they had already acquitted the defendant of the top count of attempted murder in the second degree based on justification.

*People v Feuer* (11 AD3d 633 [2d Dept 2004]) is illustrative. There, the trial court instructed the jury on the defense of justification with respect to each of the four counts charged; it did not direct that if the jury found defendant not guilty by reason of justification as to a greater count, it was not to consider any lesser counts (*id.* at 634), an instruction generally denominated a "stop deliberations" charge. The Second Department reviewed the defendant's claim in the interest of justice, noting that the justification defense was a critical component of the trial and that the asserted deficiency in the court's instructions constitutes reversible error (*id.*, citing *People v Ross*, 2 AD3d 465 [2d Dept 2003], *lv denied* 2 NY3d 745 [2004];

*People v Roberts*, 280 AD2d 415 [1st Dept 2001], *lv denied* 96 NY2d 906 [2001]).

In *Roberts*, this Court held that although the jurors were instructed that a unanimous guilty verdict on a greater charge precluded consideration of any lesser charges and that justification was a defense as to all counts, the trial court did not make clear that if they found the defendant not guilty by reason of justification on a count, they were not to consider any lesser crimes (280 AD2d at 416). We found that the trial court erred in failing to instruct the jurors that a finding of not guilty on a greater charge on the basis of justification precluded consideration of any lesser counts (*id*.). Without knowing the basis for acquittal on the top count, we held that reversal of the judgment was required (*id*.).

Considered as a whole, the instructions and verdict sheet at issue did not adequately convey the principle that if the jury found defendant not guilty of the greater charge on the basis of justification, it was not to consider any lesser counts. Because there is no way of knowing whether the acquittal of the top count of attempted murder in the second degree was based on a finding of justification by the jury, the two counts of the indictment that resulted in conviction must be reversed.

In light of this determination, we find it unnecessary to reach any other issues.

Accordingly, the judgment of the Supreme Court, Bronx County (James M. Kindler, J.), rendered March 11, 2013, convicting defendant, after a jury trial, of attempted assault in the first degree and assault in the second degree, and sentencing him, as a second violent felony offender, to concurrent prison terms of nine years and six years, respectively, to be followed by five years' postrelease supervision, should be reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

Acosta, Andrias, Moskowitz and Kapnick, JJ., concur.

Judgment Supreme Court, Bronx County, rendered March 11, 2013, reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial.